**In re SACRED HEART HOSPITAL OF NORRISTOWN, etc., Debtor.**

**SACRED HEART HOSPITAL OF NORRISTOWN, etc., Plaintiff/Appellee,**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, Defendant/Appellant.**

**Civil Action Nos. 96–6172, 96–6286.**

United States District Court, E.D. Pennsylvania.

Jan. 17, 1997.

Matthew M. Strickler, Vincent J. Marriott, III, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Sacred Heart Hosp. of Norristown.

Sacred Heart Hosp. of Norristown, Norristown, PA, pro se. in No. 96–CV–6286.

Neal D. Colton, Cozen and O'Connor, Philadelphia, PA, for Official Committee of Unsecured Creditors.

Lesley S. Oakes, Robert E. Slavkin, Harrisburg, PA, Thomas J. Blazusiak, Office of Legal Counsel, Dept. of Public Welfare, Harrisburg, PA, for Commonwealth of Pennsylvania, Dept. of Public Welfare.

Frederic J. Baker, Trustee, Philadelphia, PA.

### MEMORANDUM & ORDER

DITTER, District Judge.

There are two questions in this case: (1) Does the Bankruptcy Clause of the Constitution give Congress the authority to abrogate the states' sovereign immunity granted by the Eleventh Amendment? and (2) Does a claim by a state agency against a bankruptcy estate waive the state's right to Eleventh Amendment immunity as to an unrelated claim made by the bankruptcy estate against

another state agency? I answer no to both questions.

This matter is on appeal from two orders of the United States Bankruptcy Court for the Eastern District of Pennsylvania. The defendant, Commonwealth of Pennsylvania, Department of Public Welfare ("DPW"), a state agency, appeals from the orders of the bankruptcy court holding that DPW is subject to suit in federal court for claims made by the debtor in bankruptcy, the Sacred Heart Hospital of Norristown.[1]

The bankruptcy court's first order, dated August 7, 1996, denied DPW's assertion of Eleventh Amendment immunity as a defense to Sacred Heart's lawsuit. The second order, dated August 15, 1996, purported to enter a final declaratory judgment for Sacred Heart, preclude DPW from asserting a crucial defense to Sacred Heart's claims, and order DPW and Sacred Heart to litigate the claims before a state administrative agency. The bankruptcy court entered this second order without taking any evidence or making any factual findings. DPW timely appealed from both orders. I consolidated these appeals. I will reverse the August 7 order. I also conclude that I must vacate the August 15 order because the bankruptcy court did not have jurisdiction to enter it. The bankruptcy court is instructed to dismiss the complaint.

### I. JURISDICTION AND STANDARD OF REVIEW

■ I have jurisdiction of these appeals. The parties agree that the August 7 order is not final within the meaning of 28 U.S.C. § 158(a)(1). However, because the order denied an assertion of Eleventh Amendment immunity, it fits within the collateral order exception to the final judgment rule and is immediately appealable. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 142–43, 113 S.Ct. 684, 686–87, 121 L.Ed.2d 605 (1993). The bankruptcy court ruled on the issue of whether Eleventh Amendment immunity is available to DPW as

---

1. In this opinion, consistent with the United States Supreme Court's practice, I use the terms "state sovereign immunity," "sovereign immunity," and "Eleventh Amendment immunity" inter-

changeably. *See Seminole Tribe of Florida v. Florida*, —— U.S. ——, ——, ——, 116 S.Ct. 1114, 1119, 1125, 134 L.Ed.2d 252 (1996).

a defense on a motion to dismiss for failure to state a claim. Because that was a purely legal determination, I employ a plenary standard of review. *In re C.S. Assocs.*, 29 F.3d 903, 905 (3d Cir.1994). The August 15 order purported to enter a final declaratory judgment for Sacred Heart and is immediately appealable pursuant to 28 U.S.C. § 158(a)(1). The issue relating to this order is whether the bankruptcy court had jurisdiction over the case at the time it was entered; I exercise plenary review over jurisdictional questions. *See United States v. Idone*, 38 F.3d 693, 697 (3d Cir.1994).

## II. *FACTS AND PROCEDURAL HISTORY*

For purposes of deciding DPW's motion to dismiss, the bankruptcy court accepted as true the factual allegations in Sacred Heart's complaint. I must do the same. On May 18, 1994, Sacred Heart, a well-known hospital in suburban Philadelphia, closed its doors and ceased operations. (Compl.¶ 6). Exactly one week later, it sought protection under Chapter 11 of the federal bankruptcy code.[2] (*Id.* ¶ 7). In 1967, Sacred Heart had begun to provide medical treatment to patients under Pennsylvania's Medical Assistance program, *see* 55 Pa.Code §§ 1101.11–1251.81. (*Id.* ¶ 5). The hospital's financial demise ended its participation in the program. (*Id.* ¶ 6). In March, 1995, Sacred Heart submitted invoices to DPW for payment for some of the medical treatments it had provided to patients under the program. (*Id.* ¶ 10). On September 21, 1995, the state's Office of Inspector General ("OIG") returned the invoices to Sacred Heart because they were incorrectly completed. (*Id.* ¶ 11). Sacred Heart resubmitted them to the OIG's office in January, 1996, (*id.* ¶ 12), and submitted additional invoices to DPW in May of 1996. (*Id.* ¶ 13). DPW denied all of Sacred Heart's claims because Sacred Heart failed to present them to DPW within 180 days after the treatment was rendered. (*Id.* ¶ 14). Pennsylvania regulations require that such claims be submitted within that time. *See* 55 Pa.

Code § 1101.68. Sacred Heart then filed the adversary action which led to these appeals.

As relief, Sacred Heart demanded judgment against DPW "in the amount to which it is entitled under the Medical Assistance program," (compl. at 5), and did not request a declaratory judgment. The complaint sought this relief against "the Department of Public [Welfare] of the Commonwealth of Pennsylvania," (*id.* ¶ 2), and did not request a prospective injunction against any state officials.

Earlier in the bankruptcy proceedings, the Pennsylvania Department of Labor and Industry ("DLI"), which, like DPW, is a state agency, filed a proof of claim against the Sacred Heart estate and was awarded $2.5 million for unreimbursed unemployment benefits. *See In re Sacred Heart Hosp. of Norristown*, 190 B.R. 38 (Bankr.E.D.Pa.1995). Sacred Heart points out in its brief that the Pennsylvania Department of Revenue also filed a claim against the bankruptcy estate for sales and withholding taxes. Sacred Heart did not seek to set off its claim against DPW against the claims of DLI or the Department of Revenue and there is no allegation by any party at any time either in the complaint or in any other document that DLI's or the Department of Revenue's claims bear any relationship to Sacred Heart's claim against DPW other than the fact that they all involve Pennsylvania state agencies.

In the bankruptcy court, DPW moved to dismiss the complaint for various reasons, including the ground that the Eleventh Amendment barred the suit. In its August 7 order the bankruptcy court denied DPW's motion. The court construed Sacred Heart's complaint as seeking a judgment declaring that the claims were timely presented and not requesting payment of money. *See Sacred Heart Hosp. of Norristown v. Commonwealth of Pa. Dep't of Welfare*, 199 B.R. 129, 131–32 (Bankr.E.D.Pa.1996). Based on that conclusion, in the order dated August 15, the court entered judgment for Sacred Heart declaring that 11 U.S.C. § 108 applied to

---

**2.** The federal bankruptcy code is codified at 11 U.S.C. §§ 101–1329. Chapter 11 is found at §§ 1101–74.

Sacred Heart's claims. One of the things § 108(a) does is extend a nonbankruptcy "period within which the debtor may commence an action" for an additional time after filing of the initial bankruptcy petition.[3] The effect of the bankruptcy court's declaration was to eliminate DPW's untimeliness defense to Sacred Heart's claims by extending the state-law, 180–day submission period. This apparently made timely all of Sacred Heart's Medical Assistance reimbursement claims against DPW. The court then ordered the parties to submit these claims to DPW's administrative review procedure and report back to it regarding the progress of those proceedings.

The bankruptcy court's conclusion in its August 7 opinion that the Eleventh Amendment did not bar Sacred Heart's claims appeared to have two bases. First, the court reasoned that Eleventh Amendment immunity does not bar entry of a declaratory judgment against DPW stating that Sacred Heart's claims were timely. *Sacred Heart,* at 135. Second, the court concluded that Pennsylvania waived its state sovereign immunity as to all claims relating to the Sacred Heart bankruptcy when DLI filed its proof of claim for the unreimbursed unemployment benefits. *Id.* at 134–35.

### III. *DISCUSSION*

■ The Eleventh Amendment to the United States Constitution generally prohibits suits against the states or their agencies in the federal courts. The prohibition limits the federal courts' subject-matter jurisdiction under Article III, *see Seminole Tribe of Florida v. Florida,* —— U.S. ——, ——, 116 S.Ct. 1114, 1127, 134 L.Ed.2d 252 (1996), and is so important to our system of government that the United States Supreme Court has char-

acterized it as a "fundamental constitutional protection," *Puerto Rico Aqueduct,* 506 U.S. at 145, 113 S.Ct. at 688, a "fundamental principle" of the federal system, *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985), and "vital." *Welch v. Texas Dep't of Highways and Pub. Transp.,* 483 U.S. 468, 475, 107 S.Ct. 2941, 2946–47, 97 L.Ed.2d 389 (1987).

■ There are only three narrow exceptions to this general prohibition. An individual may sue a state official for prospective equitable relief requiring the state official to cease violating federal law. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Secondly, suit is allowed directly against the state when the state properly waives its sovereign immunity. *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). Finally, an individual may sue a state if Congress has properly abrogated the states' immunity. *Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1125.

### A. *Abrogation*

■ Sacred Heart first argues that its suit fits within the third exception because, in 11 U.S.C. § 106(a) (Supp.1996),[4] Congress properly abrogated the states' immunity from the type of declaratory judgment entered against DPW in this case. For the reasons that follow, I find that argument unpersuasive. In *Seminole Tribe* the Court defined the scope of Congress' authority under the Constitution to abrogate state immunity, holding that the Indian Commerce Clause, U.S. Const., art. I, § 8, cl. 3, did not give Con-

---

**3.** 11 U.S.C. § 108(a) provides:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the latter of:
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) two years after the order for relief.

**4.** Section 106(a) provides in part: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section...." The section goes on to list, among other things, the sections of the bankruptcy code for which immunity is abrogated, 11 U.S.C. § 106(a)(1), and the type of relief which the court may award against the governmental unit, "an order, process, or judgment ... including an order or judgment awarding a money recovery." 11 U.S.C. § 106(a)(3). A governmental unit includes a state agency. 11 U.S.C. § 101(27).

gress sufficient power to do so.[5] The Court ruled that Congress has no authority to override Eleventh Amendment immunity even when the Constitution gives Congress complete lawmaking authority over a particular area, such as the regulation of commerce with and among Indian tribes. *Id.* at —, 116 S.Ct. at 1131. Rather, only where a particular constitutional provision "fundamentally alter[s]" the relationship between the states and the federal government does the provision give Congress sufficient power to ignore state sovereign immunity. *Id.* at —, 116 S.Ct. at 1125. Thus far, the Court has construed only § 5 of the Fourteenth Amendment to have so altered this relationship to give Congress sufficient authority to abolish sovereign immunity.

■ While strictly speaking, the constitutionality of section 106(a) of the bankruptcy code was not before the Court in *Seminole Tribe,* the case is still controlling here. In 11 U.S.C. § 106(a), Congress purported to abrogate the states' Eleventh Amendment immunity in bankruptcy proceedings. Congress enacted § 106(a) pursuant to the Constitution's Bankruptcy Clause. *See* U.S. Const., art. I, § 8, cl. 4 ("The Congress shall have Power [t]o ... establish uniform laws on the subject of Bankruptcies"). The Bankruptcy Clause is identical to the Indian Commerce Clause in both wording and scope. Specifically, the Bankruptcy Clause grants Congress power with the exact words used in the Indian Commerce Clause: "The Congress shall have Power [t]o...." Moreover, nothing in the text or history of the Bankruptcy Clause indicates a fundamental alteration of the balance of power between the states and the federal government any more than the Indian Commerce Clause's language does. As the Court in *Seminole Tribe* explained, the fact that a clause grants Congress wide authority to regulate a particular area does not change the required analysis: the holding does not rest on the *amount* of power given to the federal government, but on

whether the provision fundamentally changes the state-federal relationship. Given the identity between the Bankruptcy Clause and the Indian Commerce Clause in language and scope, I conclude that the reasoning in *Seminole Tribe* applies in this case and that 11 U.S.C. § 106(a) is unconstitutional as to the states because the Bankruptcy Clause does not give Congress the authority to abrogate the states' sovereign immunity. *Accord In re York–Hanover Devs., Inc.,* 201 B.R. 137, 141 (Bankr.E.D.N.C.1996); *In re Martinez,* 196 B.R. 225, 230 (D.P.R.1996) (citing *Ohio Agric. Commodity Depositors Fund v. Mahern,* — U.S. —, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996) (remanding bankruptcy case for further consideration in light of *Seminole Tribe* )); *In re Headrick,* 200 B.R. 963, 966 (Bankr.S.D.Ga.1996);[6] S. Elizabeth Gibson, *Sovereign Immunity in Bankruptcy: The Next Chapter,* 70 Am. Bankr.L.J. 195, 201 (1996).

Sacred Heart contends that the Framers of the Constitution intended the Bankruptcy Clause to apply to the states irrespective of the Eleventh Amendment because they granted Congress authority to enact "uniform" bankruptcy laws. *See* U.S. Const., art. I, § 8, cl. 4. According to Sacred Heart, the laws can only be "uniform" if they are applied against the states and private parties alike. That argument is unpersuasive.

First, as I have explained, in order to grant Congress sufficient authority to abrogate Eleventh Amendment immunity, the Framers must have intended a fundamental alteration of the federal-state relationship. *Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1125. Merely providing for "uniformity" does not do so and contrasts starkly with the language and history of the Fourteenth Amendment where such an alteration was intended. The plain language of that amendment explicitly limits state power, *see* U.S. Const., amend. XIV, § 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the

---

5. The Court overruled *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which had held that Congress may abrogate the states' Eleventh Amendment immunity pursuant to the Commerce Clause.

6. The court in *Headrick* alternately concluded that Congress enacted § 106(a) pursuant to § 5 of the Fourteenth Amendment, and therefore had authority to abrogate state sovereign immunity. Sacred Heart makes no such argument.

United States"), and specifically grants Congress the authority to enforce that limitation. *See id.* § 5 ("The Congress shall have power to enforce, by appropriate legislation, the provisions of this article"); *accord Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1125 (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). Further, the fact that the Fourteenth Amendment was added to the Constitution after ratification of the Eleventh Amendment, with state sovereign immunity in the minds of the drafters, strongly supports this conclusion. *See Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1128.

Second, the uniformity requirement does not mandate equal treatment of all persons regardless of their public or private status, but is aimed at assuring *geographic* uniformity. *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 172, 67 S.Ct. 237, 244–45, 91 L.Ed. 162 (1946).[7] That the states are not subject to suit in bankruptcy by virtue of the Eleventh Amendment does not frustrate this aim because state sovereign immunity applies to all states, all debtors, and all creditors alike. Sacred Heart's argument is especially dubious given the Framers' virtually unanimous belief that states were only amenable to suit upon their consent and the "shock of surprise" that arose when the Supreme Court in *Chisholm v. Georgia,* 2 Dall. 419, 1 L.Ed. 440 (1793), allowed an individual to sue the state of Georgia in federal court without Georgia's consent. Congress reacted swiftly to reverse *Chisholm;* it proposed the Eleventh Amendment just two days after that case was decided.

▮ When it denied DPW's motion to dismiss, the bankruptcy court allowed suit directly against a state agency and interpreted *Seminole Tribe* as holding that state sovereign immunity prohibited only the award of monetary relief and did not limit the federal courts' authority to grant other relief against a state pursuant to § 106(a), such as a declaratory judgment. *Sacred Heart,* at 134–35. The bankruptcy court's conclusion is incorrect for several reasons. The Supreme Court has never construed the Eleventh Amendment as allowing relief—declaratory or otherwise—directly against a state or one of its agencies. *See, e.g., Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991). Here, Sacred Heart sued DPW, a state agency. (Compl.¶ 2).

▮ Moreover, as the Court concluded in *Seminole Tribe,* when the Eleventh Amendment is a valid defense, the type of relief at issue is unimportant. *Id.* at ——, 116 S.Ct. at 1124; *see also Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought"). Indeed, *Seminole Tribe* involved a grant of equitable relief. The only relief a federal court may order is an injunction prohibiting future violations of federal law by a state official. *Id.* at ——, 116 S.Ct. at 1132; *Ex parte Young,* 209 U.S. at 155–56, 28 S.Ct. at 452. Sacred Heart did not seek, and the bankruptcy court did not grant, such relief.

▮ Finally, while the bankruptcy court characterized as "declaratory" the relief contemplated in its August 7 opinion and order, it more closely resembled a money judgment. By finding § 108(a) applicable, the court invalidated one of DPW's crucial defenses, required it to litigate those claims before a state administrative agency, and essentially forced DPW to pay a previously incurred debt out of the Pennsylvania state treasury. Accordingly, the court's order more closely resembled a prohibited full-fledged money judgment than a traditional declaratory judgment. Such a judgment is an end run around Eleventh Amendment immunity and

---

7. Prior to the ratification of the Constitution, several states engaged in the practice of passing private acts to relieve individual debtors of financial obligations. *See* Kurt H. Nadelmann, *On the Origin of the Bankruptcy Clause,* 1 Am. J. Legal Hist. 215, 221–23 (1957). Questions arose as to whether one state was required to recognize the relief granted a debtor by another state in these private acts. *Id.* The Framers intended to resolve these questions by making the bankruptcy laws enforceable among the states and prohibiting Congress from enacting legislation releasing individual debtors from obligations. *Railway Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 472, 102 S.Ct. 1169, 1178, 71 L.Ed.2d 335 (1982).

not allowed. *See Green v. Mansour,* 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985).

### B. *Waiver*

 Sacred Heart next argues that the court below properly ruled that the state waived its sovereign immunity when DLI and the Department of Revenue filed claims against the bankruptcy estate. Like other constitutional rights, a state may waive its sovereign immunity when it either does so explicitly using "the most express language or by such overwhelming implication from that text as [will] leave no room for any other reasonable construction." *Feeney,* 495 U.S. at 305, 110 S.Ct. at 1873 (internal quotation marks omitted); *see also Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)); *Atascadero State Hosp.,* 473 U.S. at 238–40, 105 S.Ct. at 3145–46; *Florida Dep't of Health v. Florida Nursing Home,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034–35, 67 L.Ed.2d 132 (1981). Even if a state properly waives its immunity, the scope of the waiver is construed narrowly and strictly in the states' favor. *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 53–54, 64 S.Ct. 873, 876–77, 88 L.Ed. 1121 (1944); *see also Petty v. Tennessee–Missouri Bridge Comm'n,* 359 U.S. 275, 276–77, 79 S.Ct. 785, 787–88, 3 L.Ed.2d 804 (1959).

 DPW argues that §§ 106(b) and (c) are not sufficiently clear to waive a state's sovereign immunity and thus are not effective. Because I am able to dispose of Sacred Heart's waiver contention without addressing this constitutional argument, I must do so. "[F]ederal courts must consider nonconstitutional grounds for decision" before reaching constitutional issues. *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985). Therefore, for the purposes of this opinion, I will assume § 106(b) properly provides for a waiver.[8]

 In 11 U.S.C. §§ 106(b) and (c), Congress provided the exclusive mechanism for and defined the scope of the state governments' waiver of sovereign immunity in bankruptcy proceedings. *In re Price,* 42 F.3d 1068, 1072 (7th Cir.1994). Under § 106, states can waive their sovereign immunity under two sets of circumstances. First, a state may do so when it files a proof of claim against the bankruptcy estate. This waiver only applies to claims that the estate has against the state arising out of the "same transaction or occurrence" as that described in the state's proof of claim. 11 U.S.C. § 106(b) (Supp.1996).[9] Second, sovereign immunity is waived to the extent that the estate seeks to set off *any* claim it has against the state when the state files a claim against the estate. 11 U.S.C. § 106(c). This waiver is effective regardless of the relationship between the state's and estate's claims. As I explain, Sacred Heart did not seek setoff.

The bankruptcy court held that Pennsylvania waived its sovereign immunity as to Sacred Heart's claims against DPW when DLI filed its proof of claim. However, the court did not clearly state the authority for finding such an all-encompassing waiver. It relied on §§ 106(b) and (c), and cited *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) and *Granfinanciera S.A. v. Nordberg,* 492 U.S. 33, 58–59, 109 S.Ct. 2782, 2799, 106 L.Ed.2d 26 (1989)—both of which hold that an entity that files a proof of claim against a bankruptcy estate waives its right to a jury trial on its claim—and two

---

8. DPW also argues that because § 106(c) does not require the state to file a proof of claim or otherwise voluntarily avail itself of bankruptcy procedures before "waiving" sovereign immunity, it is an abrogation provision and, thus, unconstitutional in light of *Seminole Tribe.* In light of my conclusion that I should not consider the constitutionality of §§ 106(b) and (c), it is not necessary to address this argument. In any event, as I explain, § 106(c) does not apply to this case because there is no contention that Sacred Heart sought setoff against the DLI or Department of Revenue claims.

9. 11 U.S.C. § 106(b) provides:

a governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such government unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

bankruptcy court opinions concluding that a state waives its right to sovereign immunity as to all claims when it asserts a claim against a bankruptcy estate. *In re St. Mary Hosp.*, 125 B.R. 422 (Bankr.E.D.Pa.1991); *In re St. Joseph's Hosp.*, 103 B.R. 643 (Bankr. E.D.Pa.1989).

▮ Because § 106 is the exclusive mechanism for waiving sovereign immunity in bankruptcy cases, the court must employ it—and only it—in deciding whether a state waived its immunity. *See In re Price*, 42 F.3d at 1072. While the bankruptcy court cited §§ 106(b) and (c) in its opinion, it invoked § 106(c) only as inferential support for its conclusion that DLI's assertion of its claim worked an all-encompassing waiver as to all claims involving the state. The court did not find that § 106(c) directly applied. Regardless, because there is no contention that Sacred Heart claimed setoff in the proceedings involving either DLI's or the Department of Revenue's claims, § 106(c) does not govern here. Therefore, only § 106(b) could apply in this case.

Contrary to the bankruptcy court's conclusion, § 106(b) allows for only a limited waiver of immunity by a governmental unit that asserts a claim against a bankruptcy estate.[10] Under § 106(b), a state waives its sovereign immunity when it files a proof of claim only as to claims that the estate may assert against it arising from the "same transaction or occurrence" as the governmental unit's claim. It specifically does not allow for a waiver as to *all* or *any* claims that the estate may have. Indeed, Congress' use of "any

claim" to describe the claims for which sovereign immunity is waived under § 106(c) supports my reading of § 106(b).[11] If Congress intended section (b) to be read as liberally as section (c), it could have used the same or similar words. It elected not to do so.

▮ In determining what claims are part of the "same transaction or occurrence," courts look to the standards employed in identifying compulsory counterclaims under Federal Rule of Civil Procedure 13(a). *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992); *In re University Med. Ctr.*, 973 F.2d 1065, 1086 (3d Cir.1992).[12] The critical question in determining whether a claim is a compulsory counterclaim is whether it bears a "logical relationship" to the opposing party's claim. *In re University Med. Ctr.*, 973 F.2d at 1086.

There is no evidence or even a contention that Sacred Heart's claims against DPW are related in any way either to DLI's or the Department of Revenue's claims against Sacred Heart. DLI made a claim for unreimbursed unemployment compensation benefits owed by Sacred Heart. The Department of Revenue made a claim for employment and sales taxes. In contrast, Sacred Heart's claim against DPW was for Medical Assistance payments for services provided to its patients. The only "relationship" between the claims is that they all involve Sacred Heart and a Pennsylvania state agency. Such a tenuous connection does not satisfy the "same transaction or occurrence" standard in § 106(b).

10. In 1994, Congress amended § 106 in response to the Supreme Court's conclusion that § 106(c) did not explicitly abrogate states' sovereign immunity. *See Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In the pre-amendment version of § 106, subsection (a) was identical to present-day § 106(b); subsection (b) was identical to present-day § 106(c); and subsection (c) purported to govern abrogation of sovereign immunity. After those amendments recodified § 106, section (a) governed abrogation.

11. Congress narrowed the scope of the waiver another way when it amended § 106 in 1994. The previous version of the waiver provision provided that a state waived its sovereign immunity any time it possessed a claim against the

estate regardless of whether it had filed a proof of claim in bankruptcy. *See* 11 U.S.C. § 106(a) (1993). Under the present version of the statute, a state must file a proof of claim before waiving its sovereign immunity. *See* 11 U.S.C. § 106(b) (Supp.1996).

12. Prior to the amendments Congress intended that § 106(a) (now section (b)) would employ the compulsory counterclaim standard. *See* S.Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5815; H.R.Rep. No. 95–595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6274. That conclusion was not changed by the 1994 amendments. *See* H.R.Rep. No. 103–835 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3350–51.

Aside from its reliance on § 106(b), the bankruptcy court cited *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), and *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), in support of its broad allowance of sovereign immunity waivers. Neither of these cases support the bankruptcy court's reasoning. In *Culp*, the Supreme Court held that an entity filing a proof of claim voluntarily submits itself to the bankruptcy court's procedures and waives its Seventh Amendment right to a jury trial. Similarly, *Nordberg* held that creditors who file claims against the bankruptcy estate "subject themselves to the court's equitable powers to disallow those claims." *Id.* at 59 n. 14, 109 S.Ct. at 2799 n. 14. Based on these cases, there is no doubt that voluntarily submitting to the bankruptcy court by filing a proof of claim waives any number of rights. However, as both of those cases note, a party only submits itself to whatever *power* the bankruptcy court may have. If the bankruptcy court does not have a particular power, a litigant cannot submit itself to that "power" by filing a proof of claim. *Cf. Sunshine Dev., Inc. v. FDIC*, 33 F.3d 106, 117 (1st Cir.1994) ("The general proposition that filing a proof of claim subjects a party to the bankruptcy court's equitable jurisdiction cannot be read in isolation, but, rather, must be read in conjunction with the specific statutory language ... that Congress saw fit to write").

The power of the bankruptcy court relating to waivers of sovereign immunity is governed and limited by § 106(b). Thus, a litigant filing a proof of claim submits itself to the power possessed by the court under § 106(b)—nothing more, nothing less. When DLI and the Department of Revenue filed their claims against Sacred Heart's estate, those agencies voluntarily submitted themselves to the court's authority to find a waiver and subjected themselves to compulsory counterclaims by Sacred Heart. The bankruptcy court has no authority to find another waiver of sovereign immunity completely outside of § 106(b). Furthermore, given the explicit limitations on the scope of the waiver in § 106(b), the fact that a state is a "single creditor" for bankruptcy purposes makes no difference to this analysis.

I now turn to the two other opinions relied on by the bankruptcy court, *In re St. Mary Hosp.*, 125 B.R. 422 (Bankr.E.D.Pa.1991), and *In re St. Joseph's Hosp.*, 103 B.R. 643 (Bankr.E.D.Pa.1989). In those cases, the bankruptcy court held that, pursuant to § 106, "where any of a state's agencies has filed a proof of claim in a bankruptcy case, that state has consented to the jurisdiction of the federal courts as to its claims *inter se* with the Debtor." *St. Joseph's Hosp.*, 103 B.R. at 651. Both cases were decided prior to the 1994 amendments to § 106(c). However, because the cases both found an allencompassing waiver, which is contrary to the limited one provided for in § 106(b), for the reasons discussed above, they were incorrectly decided.

The importance of the Eleventh Amendment to states as well as the narrow path a state must take in order to waive its Eleventh Amendment rights supports my reading of § 106. The Supreme Court has repeatedly held that explicit and unambiguous language is required before a waiver can be found. *See, e.g., Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360–61; *Atascadero State Hosp.*, 473 U.S. at 238–40, 105 S.Ct. at 3145–46; *Florida Dep't of Health*, 450 U.S. at 150, 101 S.Ct. at 1034–35. Even after a court finds such a waiver, the importance of the right to the state mandates that it be construed narrowly and strictly. *Read*, 322 U.S. at 53–54, 64 S.Ct. at 876–77.

In sum, because the August 7 order violates the Eleventh Amendment, I must reverse it.

### C. *The August 15, 1996, Order.*

Next, I conclude that I must vacate the August 15 order because the bankruptcy court did not have jurisdiction over the case when the order was entered. While the bankruptcy court's August 7 order was not "final," it fits within the collateral order doctrine and is immediately appealable. *Puerto Rico Aqueduct*, 506 U.S. at 144–45, 113 S.Ct. at 687–88. Recognizing this, DPW did appeal from the August 7 order on August 13, 1996. Normally, once a party files a proper notice of appeal, a lower court is

automatically divested of jurisdiction over the lawsuit. *Main Line Federal Sav. & Loan Ass'n v. Tri–Kell,* 721 F.2d 904, 906 (3d Cir.1983). The fact that the order appealed from is a collateral order and not a traditionally final one makes no difference. *Stewart v. Donges,* 915 F.2d 572, 579 (10th Cir.1990); *see also United States v. Leppo,* 634 F.2d 101, 104–05 (3d Cir.1980). This rule is designed to prevent interference from the lower court while the appeal is pending and to conserve judicial resources by having only one court at a time review issues. The bankruptcy court retains jurisdiction over a case when a party properly appeals a collateral order only if the court finds that the appeal is frivolous. *Leppo,* 634 F.2d at 104–05.

■ Accordingly, the bankruptcy court did not have jurisdiction to enter the August 15 final judgment, because the August 13 notice of appeal was proper and because the bankruptcy court made no finding that it was frivolous. The filing of that notice of appeal automatically divested the bankruptcy court of jurisdiction. *See Princz v. Federal Republic of Germany,* 998 F.2d 1, 1 (D.C.Cir.1993); *Donges,* 915 F.2d at 578 n. 6. Thus, I must vacate the August 15 order. *See, e.g. MacKay v. Pfeil,* 827 F.2d 540, 543 (9th Cir.1987) (vacating judgment entered by court without jurisdiction).

Sacred Heart relies on *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), for the proposition that DPW's filing of a notice of appeal did not divest the bankruptcy court of the authority to require the parties to litigate the claims before the state administrative agency. This reliance is misplaced. In *Marrese,* the plaintiff filed a notice of appeal of a criminal contempt judgment entered against him as a result of his refusal to provide discovery. While that appeal was pending, the district court dismissed the plaintiff's complaint on the merits. The Supreme Court held that the district court did not lose jurisdiction to dismiss the case on the merits because of the plaintiff's appeal of the contempt judgment. The Court reasoned that the proceeding surrounding the contempt judgment was independent and

could proceed without affecting the merits of the case.

In contrast, DPW's filing of the notice of appeal to the August 7 order completely divested the bankruptcy court of jurisdiction because the issue in that appeal is a complete defense to the lawsuit and a decision in DPW's favor on that issue would end the litigation. Thus, the "aspects of the case" involved in this appeal can only be characterized as the entire case. Therefore, I must vacate the bankruptcy court's August 15 order.

### IV. CONCLUSION

For the foregoing reasons, the bankruptcy court's August 7, 1996, order is reversed. Further, because the August 15, 1996, order was entered without jurisdiction, it is vacated. This case is being remanded to the bankruptcy court with instructions to dismiss the complaint against DPW.