**In re Celia Dean WESTEFIELD, Thomas A. Trapasso, Debtors.**

**Celia Dean WESTEFIELD and Thomas A. Trapasso, Plaintiffs,**

**v.**

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy Nos. 90–13871 K, 90–13872 K. Adv. No. 94–1020 K.**

United States Bankruptcy Court, W.D. New York.

Sept. 9, 1994.

Arthur G. Baumeister, Jr., Andrews, Sanchez, Amigone, Kelleher, Mattrey & Marshall, Buffalo, NY, for debtors/plaintiffs.

Steven Cole, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## ORDER DENYING PARTIAL SUMMARY JUDGMENT, AND MEMORANDUM OF DECISION

MICHAEL J. KAPLAN, Chief Judge.

In this Adversary Proceeding two Chapter 7 Debtors, who had operated a business as partners, seek a determination of federal tax liability under 11 U.S.C. § 505, and additionally seek a determination that the Internal Revenue Service has violated the automatic stay provision, 11 U.S.C. § 362(a), by filing certain federal tax liens without leave of Court while the automatic stay was in effect.

The United States of America has answered, claiming (in part) that it was improperly sued in the name of the Internal Revenue Service. And it has moved under Bankruptcy Rule 7056 for Summary Judgment dismissing that portion of the Complaint alleging violation of the automatic stay and seeking damages, punitive damages and attorneys fees for those alleged violations under 11 U.S.C. § 362(h). The United States argues that it has not waived sovereign immunity to be sued for such damages under 11 U.S.C. § 362.

### Sovereign Immunity and § 362

■ It is the position of the United States that by virtue of 11 U.S.C. § 106, it may be viewed to have waived sovereign immunity only in the circumstances specified in § 106, and that a violation of § 362 is not such a circumstance here where the Debtors are Chapter 7 Debtors and any actions that the Internal Revenue Service undertook were actions against the Debtors personally and not against their bankruptcy estates. It argues that the effect of § 362 is to render its violative actions voidable once *it* (rather than the aggrieved party) invokes process to enforce its rights and § 362 is raised as a defense.[1]

With due respect for the numerous courts discussed in the parties' briefs, which indeed do address governmental § 362 violations by analysis of 11 U.S.C. § 106,[2] the present Court believes that 11 U.S.C. § 106 is irrelevant to the question at bar.

The so-called "automatic stay" simply codified Rules that were adopted in 1973 to "[obviate] the necessity for the bankrupt to affirmatively seek relief by an application showing that the stay sought is within the reach of Section 11a of the [Bankruptcy] Act [of 1898],"[3] and to "[dispense] with the formality of the trustee's obtaining a restraining order through application to the court."[4]

Neither those Rules nor their codification as 11 U.S.C. § 362(a) alters the nature or character of the stay as an injunction protecting the jurisdiction and integrity of this Court and its processes.

The strongest (and only) support that the present Court has found for its position is the profound argument offered by then-Chief Judge Lay, of the Eight Circuit, in his dissent in *McBride v. Coleman*, 955 F.2d 571 (8th Cir. 1992), addressing the government's breach of a District Court's injunction in a nonbankruptcy proceeding. Judge Lay's

---

1. Because this is a Chapter 7 case, there is no question but that the I.R.S. could have done anything it wanted to under Tax Law to collect these non-dischargeable debts, had it simply waited a month until the Debtors were discharged. (11 U.S.C. § 362(c)). The measure of damages here, remains for decision if violations of the stay are found to have occurred.

2. See, for example, *In re Lile*, 161 B.R. 788 (Dist.Ct.S.D.Tex.1993) and *In re Fingers*, 170 B.R. 419 (Dist.Ct.S.D.Cal.1994). If this Court were to look to 11 U.S.C. § 106 here, I would concur in those courts' analyses to the extent that

I am not prohibited from doing so by *Posey v. U.S. Dept. of the Treasury—IRS*, 156 B.R. 910 (Dist.Ct.W.D.N.Y.1993). But it is not clear that the *Posey* decision, which is binding on this Court, would permit resolution in favor of the Debtors here if the result depended upon § 106.

3. 12 Collier on Bankruptcy, 14th Ed., ¶ 401.3, discussing former Rule 401(a).

4. 13 Collier on Bankruptcy, 14th Ed., ¶ 601 [4-2], discussing former Rule 601.

conclusions, but not his analysis and authorities, are here quoted in pertinent part:

> ... I would alternatively hold that the doctrine of sovereign immunity cannot be used as a defense against the district court's compensatory sanction against the Secretary [of Agriculture] in order to make the plaintiffs whole because 'courts have inherent power to enforce compliance with their lawful orders through civil contempt.'
>
> ...
>
> Without question, the power of the judiciary to compel compliance with its orders extends to the executive branch ...
>
> If sovereign immunity can bar compensatory sanctions for the contempt against the United States, the judiciary becomes completely dependent on the good graces of the executive branch for compliance with its orders....
>
> It would seriously erode our system of separation of powers if the executive branch was effectively immune from the judicial power. The federal courts must have the inherent authority to enforce executive branch compliance with judicial orders which serve to restore to the status quo a party injured as a direct result of the government's contumacious conduct. Otherwise, the judiciary would be powerless to impose the most effective remedy for ensuring compliance with its orders against the most frequent litigant in the federal courts.
>
> This case involves a fundamental question relating to the inherent power of the federal judiciary as a co-equal branch of government. The power to use money sanctions as a means of reparation rests upon the fundamental premise that 'what the chancellor may order, he may enforce.'
>
> [citations and footnotes omitted]

Judge Lay thoroughly supported his argument with pertinent authorities.

Higher authorities seemingly to the contrary had nothing to do with injunctions or contempts. See *U.S. v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *In re Nordic Village*, —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Within this District, see *Posey v. U.S. Dept. of Treasury—I.R.S.*, 156 B.R. 910 (Dist.Ct.W.D.N.Y. 1993).

Furthermore, it is only monetary relief that was at issue in those cases, and the *Nordic Village* case has been described by one Circuit as a holding that permits the recovery of "declaratory and injunctive relief" against governmental entities. *In re Graham*, 981 F.2d 1135 (10th Cir.1992).

Thus, as to declaratory relief, today's holding is consistent with higher authority, and insofar as it deals with enforcement of an injunction rather than an original civil cause of action, it is distinguishable on those grounds from higher court rulings seemingly to the contrary, even though it seeks monetary relief.

This Court would add to Judge Lay's analysis only the following additional considerations unique to bankruptcy stays:

It is not disputed that the United States and its agencies, officers, and employees are subject to the injunctive provisions of 11 U.S.C. § 362(a). What is disputed is whether the Debtor may "sue" for the Federal Government's wilful violation of that injunction. The notion that enforcement of an injunction involves a "suit" (which may be brought against the sovereign only with the sovereign's consent) is a fiction.

■ Where the injunction binds the sovereign by statute (as here) or binds it by judicial process, there is no new "suit" involved when one protected by the injunction seeks to enforce it. Rather, few propositions are as well settled in American jurisprudence as the proposition that "[T]he violation or disobedience of an injunction issued by a court having the requisite jurisdiction is punishable as a contempt of court...."[5] And indeed a motion for a finding of contempt for violation of the automatic stay was the proper procedure for raising these issues[6] before

---

**5.** 17 Am.Jur.2d, Contempt § 137 and the numerous authorities cited therein. Also see *Ex parte Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888).

**6.** See, for example *In re Pyramid Restaurant Equipment Co., Inc.*, 24 B.R. 455 (Bkrtcy. W.D.N.Y.1982). As to similar earlier practice,

the 1984 jurisdictional amendments to the 1978 Bankruptcy Reform Act threw the contempt powers of the Bankruptcy Court into a realm of uncertainty. Nonetheless, those amendments added subsection (h) of § 362 to make it clear that the types of remedies that bankruptcy courts historically granted in the context of a contempt motion are still available: "(a) An individual injured by any wilful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and in appropriate circumstances, may recover punitive damages."

One need look no further than the use of the phrase "all entities" in 11 U.S.C. § 362(a) and the definition of entity at 11 U.S.C. § 101(15) to determine that the injunction applies to the United States and to everyone who has sworn an oath to uphold its laws. Immunity from "suit" is not the issue here. At issue is obedience to a statute that the Bankruptcy Courts are charged with enforcing. That the party aggrieved by wilful violation of the injunction—here the Debtors— must by some means ask the Court to apply a mechanism of enforcement does not convert the request for sanction into a "suit" against which the violators here enjoy "sovereign immunity."[7] The doctrine of "sovereign immunity" does not insulate the Internal Revenue Service and its officers, agents and employees from the operation of the statute itself, or from the orders of this Court in aid of the statute.

The motion for partial summary judgment is denied insofar as it invokes sovereign immunity as a defense to the Adversary Proceeding, and the persons that constitute the Internal Revenue Service are encouraged to reflect upon their oaths of office, by which

they have sworn to uphold the laws of the United States. The view that they may freely violate a clear statutory injunction because they believe that sovereign immunity would protect them from an enforcement action is an arrogant, autocratic and dangerous one, and would be utterly indefensible were it not for the fact that some courts have had some difficulty in analyzing this question. One wonders whether these persons would argue the same position if the bill passed by Congress and signed by the President were to have said: "The I.R.S. shall not undertake any act to create, perfect, or enforce against property in the custody of the Bankruptcy Court any lien to the extent that...." To the present Court, 11 U.S.C. §§ 101(15) and 362(a)(5) say precisely that, and when the Internal Revenue Service ignores that command, it is not immune, whether it is acting as a sovereign or not. This is, after all, still a government of law, not of persons.

### As Applied to These Debtors' Cases

■ The offensive conduct, according to the Debtors, consists of the Internal Revenue Service's assessment of partnership taxes against the individual partners during the pendency of the stay, despite their counsel's warning to the Internal Revenue Service; it further consists of the Internal Revenue Service's reliance on that assessment in further pressing their claims (after the stays had terminated.)

Whether the Internal Revenue Service in fact violated the stay when it assessed partnership taxes against Celia Westefield as the "responsible" partner and when it used the partnership I.D. number will be left for fu-

see *Converse v. Highway Construction Co. of Ohio*, 107 F.2d 127 (6th Cir.1939).

7. There can be no doubt but that "suit" is a farreaching term when sovereign immunity is at issue. However, "an indirect or constructive contempt is usually brought to the knowledge of the court by an affidavit or by an information setting forth the facts, or by some equivalent proceeding which fairly informs the alleged contemnor of the charge." 17 Am.Jur.2d, Contempt § 175. For example, in *Ex parte Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888), the Court quoted Blackstone as follows, as to contempts: "[I]n matters that arise at a distance and of

which the court cannot have so perfect a knowledge, unless by the confession of the party or the testimony of others, if the judges *upon affidavit* see sufficient ground to suspect that contempt has been committed, they either make a rule on the suspected party to show cause why an attachment should not issue against him; or, in very flagrant instances of contempt, the attachment issues in the first instance...." In other words, contempt proceedings are not "suits." Rather they are extensions of the Court's own authorities; extensions that are evoked when "knowledge" of contemptuous conduct is brought to the Court's attention.

ture decision—it is not currently before the court. But the Internal Revenue Service does now ask for a ruling that such assessment did not violate the stay that protected Thomas Trapasso, who was not named in the assessment.

It seems that the Internal Revenue Service has done nothing here that it could not have done a month or so later when the stay terminated under § 362(c) as to "property of the Debtors." Consequently, the only violation here is to deny the Debtors their "breathing spell." That alone, however, may be actionable under § 362(h). And against the background here alleged, in which the Debtors' counsel was communicating with the Internal Revenue Service, cautioning it and utilizing the breathing spell to seek a negotiated settlement, this Court cannot conclude on the present motion that the assessment of partnership taxes against Celia Westefield was not an act calculated to harass Thomas Trapasso.

The Internal Revenue Service motion is in all respects denied. A further telephonic status conference shall be conducted on September 23, 1994 at 2:00 p.m.

SO ORDERED.