In re Thomas F. ZYWICZYNSKI,
d/b/a Tom's Trucking &
Concrete, Debtor.

Morris L. HORWITZ, as
Trustee, Plaintiff,

v.

Thomas F. ZYWICZYNSKI, Charles F.
Tiranno, individually and d/b/a Chuck
Tiranno Kennels and Game Farm, New
York State Department of Environmental Conversation, Region 8 Office, Marine Midland Bank, Defendants.

Bankruptcy No. 94–11743 K.
Adversary No. 97–1013 K.

United States Bankruptcy Court,
W.D. New York.

July 16, 1997.

Morris L. Horwitz, Horwitz & Frankel,
New York City, for Plaintiff.

Daniel E. Brick, Brick, Brick & Elmer,
P.C., New York City, for Debtor.

James M. Joyce, Cheektowaga, NY, for Defendant, Charles F. Tiranno.

Dennis C. Vacco, Attorney General by Linda E. White, Assistant Attorney General, New York City, for New York State Dept. of Environmental Conservation.

Michael T. Ryan, New York City, for Marine Midland Bank.

MICHAEL J. KAPLAN, Bankruptcy Judge.

Today, forced by the State of New York, the Court rules that recent illumination of the Eleventh Amendment does not preclude this Court's inquiry into whether money not *owned* by the State of New York (the "State"), but *claimed* by the State, is "property of the estate" under 11 U.S.C. § 541, and subject to turnover under 11 U.S.C. § 542, at least here where the State may have taken steps after bankruptcy to increase its claim to the property. But it is only the right to possession that may be adjudicated here, not ownership rights.[1]

## BACKGROUND

This is a Chapter 7 case in which the Trustee has commenced an Adversary Proceeding against: (1) the Debtor who was in the construction business; and (2) against a landowner (the "Landowner") with whom the Debtor had at one time contracted for construction work on the Landowner's kennel and farm; and (3) against the New York State Department of Environmental Conservation ("the State"); and (4) against Marine Midland Bank (the "Bank"). One of the prayers of the Complaint is that each of the defendants be determined to have no further right, title or interest in a certain $12,000

certificate of deposit (the "C.D.") bought by the Debtor and held by the Bank. Principally on authority of the case of *Seminole Tribe v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996),[2] the State has moved to dismiss on grounds of sovereign immunity. Further, the State argues that it is an indispensable party to this litigation (an argument with which the Bank agrees),[3] and that consequently the Trustee must pursue all aspects of this litigation in an appropriate state forum, as it pertains to the C.D.[4]

In the grand scheme of bankruptcies, this is an insignificant case; possibly a "no-asset" case. Twelve thousand dollars is at stake here, but the legal issue is worth far more. The Trustee has no resources with which to pursue this matter in another forum, not even to pay a filing fee in another court. He argues this:

Central to the Bankruptcy Code is the premise that the Court obtains and maintains control of the property of the estate upon the filing of a petition in bankruptcy.... Recognizing the uniqueness of the Bankruptcy Code requires that *Seminole* not be read as an absolute prohibition whenever a State or one of its agencies appears as a defendant in an adversary proceeding. The exceptions *to Seminole* may not be exclusive since the issues presented herein are not addressed by *Seminole*, to wit: To what extent may the Bankruptcy Court continue to exercise exclusive jurisdiction over property of the estate even when that property is or may be the possession of the State or one of its agencies. The Trustee urges upon the Court that it find that the Bankruptcy

---

1. In a reorganization case, the right to possession can be critical; such as with regard to the right to possess and use manufacturing equipment. In a liquidation case like this one, the right to possession is important to procedure, as it may result in the filing of a proof of claim or other submission to jurisdiction.

2. In *Seminole* it was held that the States' immunity under the Eleventh Amendment can be abrogated by Congress only when Congress acts under the Fourteenth Amendment. The "Bankruptcy Clause" is in Article I, § 8 of the Constitution, not in the Fourteenth Amendment. Hence, by implication, 11 U.S.C. § 106 is uncon-

stitutional to the extent that it purports to abrogate State sovereign immunity for bankruptcy purposes. *See, e.g., Sacred Heart Hospital v. Pennsylvania Dept. of Welfare (In re Sacred Heart Hospital)*, 204 B.R. 132, 138 (E.D.Pa.1997).

3. The Bank fears multiple exposure, and also has claims of its own as a creditor of the Debtor.

4. The Trustee also seeks monies alleged to be owed by the Landlord for work completed. The C.D. is not implicated in that aspect of the Complaint.

Court may retain jurisdiction over such property regardless of its location and deny the within motion.

Trustee's Reply Affirmation, filed June 24, 1997.[5]

The statutory underpinnings of the Trustee's arguments are "meat and potatoes" here and are as follows: (1) 11 U.S.C. § 541 states that the commencement of a bankruptcy case "creates an estate." "Such estate is comprised of all of the following property, *wherever located and by whomever held: . . .* all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added); (2) 28 U.S.C. § 1334(e) provides that the "district court in which a case under title 11 is commenced or is pending shall *have exclusive* jurisdiction of all of the property, *wherever located,* of the debtor as of the commencement of such case, and of the property of the estate." 28 U.S.C. § 1334(e) (emphasis added); (3) pursuant to 28 U.S.C. § 157(a) and a General Order of Reference entered by the District Court of this district on July 13, 1984 (which has since been amended from time to time) this Bankruptcy Court exercises the District Court's bankruptcy jurisdiction; (4) 11 U.S.C. § 542(a) provides that "an entity[6] . . . in possession, custody or control, during the case, of [property of the estate][7] . . . *shall deliver to the Trustee, and account for, such property or the value of such property . . . .*" 11 U.S.C. § 542(a) (emphasis added).

■ Before it decided to move to dismiss, the State did file an Answer.[8] From the Answer, it appears to be undisputed that the C.D. in question was purchased by the Debtor to secure the State against environmental reclamation obligations that could arise incident to the Debtor's undertaking to do some construction work pertaining to the building of ponds and/or marshes on the Landowner's property. Before bankruptcy, the State issued a permit to the Debtor, who did some work which he did not complete. Sometime after the filing of the Debtor's bankruptcy petition, the State reissued an environmental permit directly to the Landowner using the Debtor's existing C.D. as a bond, and thereafter refused to permit the Bank to pay the funds represented by the C.D. to the Trustee. It has not yet been determined, in any forum, whether there is any liability to the State arising from the Debtor's construction work. We do not know whether the State (or anyone else, other than the Trustee) is entitled to those funds. The State has cited no authority under which its claim of right is derived, and it argues that it cannot be made to do so in federal court. (It has cited the statute that required the posting of the bond, but no law governing the extinction of others' rights thereto.)

Someone other than the Debtor is now enjoying the value of that C.D. While it is possible that the State or the Landowner or the Bank is fully entitled to it, that question is the only question that the Trustee seeks to examine here. He argues that this otherwise assetless estate should not be relegated to some other forum for the mere purpose of determining whether he has any significant legal or equitable interest to pursue, even if any interest he has must ultimately be pursued elsewhere.

■ The Trustee asks for little. The State will not give an inch; not a modicum of discovery or cooperation. Invoking the authority of such cases as that of *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993), the State insists that because the Eleventh Amendment provides a privilege not to be sued, not merely a defense to liability, the State need not concede that there is any extent at all to which it can be compelled to participate here, even if only as

---

5. In fact, the Complaint, as written, clearly exceeds the bounds of the Eleventh Amendment to the extent that declaratory relief and turnover.

6. A "governmental unit" is included in the definition of "entity" contained at 11 U.S.C. § 101(15).

7. 11 U.S.C. § 542 references § 363 of the Code, and 11 U.S.C. § 363(b)(1) generally refers to "property of the estate."

8. Of course, Eleventh Amendment immunity may be raised at any time. *See Florida Dept. of State v. Treasure Salvors,* 458 U.S. 670, 683 n. 18, 102 S.Ct. 3304, 3314 n. 18, 73 L.Ed.2d 1057 (1982).

a nominal party protected from any adjudication of rights and protected against the application of any preclusion doctrines. The State argues that where it is a necessary party in a proceeding to determine whether property is "property of the estate" under 11 U.S.C. § 541 and where it does not consent to federal jurisdiction, the Trustee has no choice but to go to a nonfederal forum for a determination of whether the property in question is "property of the estate." The State's intractability in that regard has forced the Constitutional question, and is regrettable.

So narrowly framed, and in light of the recent pronouncements in *Seminole* which upset 150 years of reliance by bankruptcy experts and other experts on the applicability of federal law to the states, this Court believes the issue before it to be a matter of first impression.[9] This issue is important to the State [10] and the Court undertakes its duty with appropriate solemnity.

Unlike *Northern Pipeline Construction v. Marathon Pipe Line*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the question here goes to the heart of what bankruptcy courts do, *i.e.*, the "core" of the bankruptcy process. There are two issues to be addressed. The first is the scope of inquiry that is permissible here, now that the State has invoked the Eleventh Amendment and has argued that this Court has no choice but to dismiss, immediately. The second issue is whether and how § 542 of the Code may be reconciled with the Eleventh Amendment.

These two questions will be addressed in reverse order, for the answer to the first question is more readily understood after the second question is explored.

### THE EXPARTE YOUNG DOCTRINE RECONCILES 11 U.S.C. § 542 AND THE ELEVENTH AMENDMENT

The Bankruptcy Clause and the Indian Commerce Clause rest directly alongside each other in Article I, § 8 of the Constitution. Consequently, *Seminole* cannot be distinguished here and must be applied. Fortunately, the Court did not leave us without guidance as to a federal court remedy for state violations of federal laws enacted under Article I, § 8. Footnote 16 of the opinion of the Court in *Seminole* specifically addressed the effect of the decision on other laws enacted under that section. The Court said: "We have already seen that several avenues remain open for ensuring state compliance with federal law.... Most notably, an individual may obtain injunctive relief under *Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ] in order to remedy a state officer's ongoing violation of federal law." *Seminole*, —— U.S. at —— n. 16, 116 S.Ct. at 1131 n. 16.[11]

■ The statutory command that one "in possession, custody, or control ... of property that the trustee may use, sell, or lease under § 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property" (11 U.S.C. § 542(a)), when assessed against the overall

---

**9.** It is of utmost importance to distinguish this case from others applying *Seminole*. Unlike *In re Sacred Heart Hospital v. Pennsylvania Dept. of Public Welfare (In re Sacred Heart Hospital)*, 204 B.R. 132 (E.D.Pa.1997); *In re Lush Lawns*, 203 B.R. 418 (Bankr.N.D.Ohio 1996); and *Sparkman v. Florida Dept. of Revenue (In re York–Hannover Dev.)*, 201 B.R. 137 (Bankr.E.D.N.C.1996), this Court is only asked to determine whether the C.D. in question was already *in custodia legis*, before the State reissued the permit on the basis of the Debtor's C.D.

**10.** When pressed at argument, the State's attorney represented that the continued use of C.D.'s to bond permits is at issue. The Court has considered the possibility that the State's arguments implicate the Constitutionality of the "turn over" provision, 11 U.S.C. § 542(a), as applied to the States, in which event the requirements of 28

U.S.C. § 2403 must be met. But that is not the question. The question is how to interpret § 542 in a manner that is consistent with the Eleventh Amendment in order to avoid a potential conflict. (If the continued use of C.D.'s to bond permits is wrapped up in whether it is a federal court or a state court that will decide the State's rights in the C.D., then one must wonder what it is that causes the State to insist on the state forum at the expense of creditors and others who are parties in interest in the bankruptcy case.)

**11.** In light of Seminole's teaching, the Exparte Young doctrine is destined for heightened interest. *See, e.g., Burgio & Campofelice, Inc. v. New York State Dept. of Labor*, 107 F.3d 1000 (2d Cir.1997) (citing *Seminole* in support of the view that an *Ex parte Young* attack is proper in some ERISA preemption cases).

statutory structure under which the bankruptcy court exercises "exclusive jurisdiction" of "property of the estate" "wherever located and by whomever held," and when assessed against the practical difficulties and likely impossibilities of handing over the reins of rehabilitative efforts (or complicated liquidation efforts) to state courts, is such as to implicate *Ex parte Young* whenever a state officer or agent refuses to obey 11 U.S.C. § 542's command to turn over property claimed by the trustee, and should suffice to establish the bankruptcy court's ancillary jurisdiction to preside over the inquiry into whether the *Ex parte Young* exception applies. If that exception would not permit a reorganization court to command that the state cease and desist from interfering with property that the debtor or trustee may and must use, sell or lease in order to rehabilitate or liquidate, then only a Constitutional amendment would salvage the rehabilitative chapters of the Bankruptcy Code. 11 U.S.C. § 542 is not only a statutory command, it is an imperative to the process. It must be obeyed by all if the purposes of Title 11, U.S.Code are to be achieved.

It may be useful to consider another analogy. Prior to the clear statutory waiver in 1994, of federal sovereign immunity for certain bankruptcy purposes (in the amendments to 11 U.S.C. § 106) the Internal Revenue Service claimed before this Court that sovereign immunity protected it from liability for its admitted violation of the automatic stay contained in 11 U.S.C. § 362(a). This Court held, in the case of *In re Westefield,* 172 B.R. 178 (Bankr.W.D.N.Y.1994), that,

[o]ne need look no further than the use of the phrase 'all entities' in 11 U.S.C. § 362(a) and the definition of entity at 11 U.S.C. § 101(15) to determine that the injunction applies to the United States and to everyone who has sworn an oath to uphold its laws. Immunity from 'suit' is not the issue here. At issue is obedience to a statute that the Bankruptcy Courts are charged with enforcing. That the party aggrieved by wilful violation of the injunction—here the Debtors—must by some means ask the Court to apply a mechanism of enforcement does not convert the request for sanction into a 'suit'

against which the violators here enjoy 'sovereign immunity' . . .

[T]he persons that constitute the Internal Revenue Service are encouraged to reflect upon their oaths of office, by which they have sworn to uphold the laws of the United States. The view that they may freely violate a clear statutory injunction because they believe that sovereign immunity would protect them from an enforcement action is an arrogant, autocratic and dangerous one, and would be utterly indefensible were it not for the fact that some courts have had some difficulty in analyzing this question.

*Id.* at 181.

*In Westefield,* this Court was able to conclude that enforcement of the statutory injunction was not a "suit" against the sovereign because at common law, violations of injunctions merely required that the violation be brought to the attention of the court, and the resulting contempt proceedings were merely an extension of the court's own authorities, not a "suit." Consequently, *Ex parte Young* was not implicated in that decision.

Here, the question is not enforcement of a statutory injunction, but enforcement of a statutory command to "turn over." The distinction is important, and perhaps dispositive of the question of whether the Eleventh Amendment applies at all to § 542 proceedings. But if it does apply, the present Court submits that the issue is peculiarly appropriate for inquiry under *Ex parte Young.*

Very recently a plurality decision of the Supreme Court reaffirmed the *Ex parte Young* doctrine in the context of Eleventh Amendment questions. In that decision, the Court stated, "We do not ... question the continuing validity of the *Ex parte Young* doctrine. Of course, questions will arise as to its proper scope and application. In resolving these questions we must ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law." *Idaho v. Coeur d'Alene Tribe,* —— U.S. ——, ——, 117 S.Ct. 2028, 2030, 138 L.Ed.2d 438 (1997). Examining the proper uses of the *Ex*

*parte Young* doctrine, the Court directed a case-by-case balancing test, and found that that doctrine did not apply where the suit in question threatened the state's sovereign interest in its lands and waters.[12]

In my view, the plurality decision in that case is not inconsistent (except as to state lands and waters) with that portion of a dissent thereto that said,

> ... [A]n issue of property title is no different from any other legal or constitutional matter that may have to be resolved in deciding whether the officer of an immune government is so acting beyond his authority as to be amenable to suit without necessarily implicating his government.... Indeed the decisions of this Court have so held or assumed as far back as the time of Chief Justice Marshall's statement in *United States v. Peters,* 5 Cranch 115, 139–140, 3 L.Ed. 53 (1809), that 'it certainly can never be alleged, that a mere suggestion of title in a state to property, in possession of any individual, must arrest the proceedings of the court, and prevent their looking into the suggestion, and examining the validity of the title.'

*Idaho,* —— U.S. ——, ——, 117 S.Ct. 2028, 2050 (Souter, J., dissenting).

### THE PERMISSIBLE SCOPE OF INQUIRY

Before going further, we must address the other question, and later put it all together. What is the permissible scope of inquiry here, now that the State has argued that I must immediately dismiss the case, and go no further, because it has invoked the Eleventh Amendment? It is useful to examine an analogue that arose under the Bankruptcy Act of 1898 ("1898 Act"), involving due process. It was well-settled under the 1898 Act that the actual or constructive possession of property by the bankruptcy court, the bankrupt, or officers or agents of the bankrupt or of the court, was a sufficient basis upon which the bankruptcy court could deal summarily with particular property and with as-serted rights or interests therein. Otherwise, resort to plenary proceedings in an appropriate forum was required, with the formalities of pleading, discovery, trial by jury, etc. Thus, in the case of *Murphy v. Hofman,* 211 U.S. 562, 29 S.Ct. 154, 53 L.Ed. 327 (1909), the Supreme Court stated that,

> where the property in dispute is in the actual possession of the court of bankruptcy, there comes into play another principal, not peculiar to courts of bankruptcy, but applicable to all courts, Federal or state. Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. *The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property.*

*Id.* at 568–69, 29 S.Ct. at 156 (emphasis added).

Similarly, in the case of *Babbitt v. Dutcher,* 216 U.S. 102, 30 S.Ct. 372, 54 L.Ed. 402 (1910), the Court stated that,

> [t]here are two classes of cases arising under the act of 1898 and controlled by different principles. The first class is where there is a claim of adverse title to property of the bankrupt based upon a transfer antedating the bankruptcy. The other class is where there is no claim of adverse title based upon any transfer prior to the bankruptcy, but where the property is in the physical possession of a third party or of an agent of the bankrupt, or of an officer of the bankrupt corporation, who refuses to deliver it to the trustee in bankruptcy. In the former class of cases a plenary suit must be brought, either at law or in equity, by the trustee, in which the adverse claim of title can be tried and adjudicated. In the latter class *it is not necessary to bring a plenary suit,* but the bankruptcy court may act summarily, and may make an order in a summary proceed-

---

**12.** This writer has sought, without success, to identify the point in the inquest at which it was decided that the Eleventh Amendment precluded more inquiry. In other words, how were the facts elicited from which it was concluded that the Eleventh Amendment precluded further inquiry? Some inquiry must have been appropriate, as submitted in the analysis later in this decision.

ing for the delivery of the property to the Trustee, *without the formality of a formal litigation.*

*Id.* at 113, 30 S.Ct. at 377 (emphasis added).

*In Whitney v. Wenman,* 198 U.S. 539, 25 S.Ct. 778, 49 L.Ed. 1157 (1905), the Court stated that,

> in view of the broad powers conferred in § 2 of the bankrupt act, authorizing the bankruptcy estate of the bankrupt to be collected, reduced to money, and distributed, and to determine controversies in relation thereto, and bring in and substitute additional parties when necessary for the complete determination of a matter in controversy, that when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, *jurisdiction exists to determine controversies* in relation to the disposition of the same and the extent and character of liens thereon or rights therein.

*Id.* at 552, 25 S.Ct. at 781 (emphasis added).[13]

Of course, the question had to arise: What does due process require when the property was in the possession of someone who asserted an adverse claim to it? Did that require a plenary action as soon as the adverse claim was asserted?

Professor Remington concluded the following:

> As a general proposition, whenever the bankruptcy court is called upon to exercise summary powers with respect to property it has jurisdiction to determine whether the property is in its possession or custody. . . .
>
> It has been held in some cases that *if the bankruptcy court has* once *determined* right of possession to particular property to be in an adverse claimant, it can proceed no farther with respect to such property except to order its surrender to the claimant.

5A Remington on Bankruptcy § 2377 (1953) (citation omitted) (emphasis added).

> . . . [I]f a right to retain possession is asserted by the respondent, by virtue of an adverse claim to the property and possession running back to before the filing of the bankruptcy petition, this raises a *preliminary issue for determination by the bankruptcy court* before proceeding further. *There is no question but that the court or referee has power to pass upon such an objection,* though it is equally well settled that the merits of the adverse claim cannot be gone into, but only whether it has some reasonable basis in law if established as respondent credibly claims to be able to establish it. To illustrate, such points have been raised and decided as whether a corporate objector is an actual claimant or a mere fiction, whether commingled goods or insurance policies are in possession of adverse claimants, bona fides in sale of a life estate, statute as an adverse claimant of the bankrupt's wife, or attorney, and whether there is any right to hold the property by virtue of attachment or other process.

Remington, *supra,* § 2427 (citations omitted) (emphasis added).

Remington quoted the case of *Mueller v. Nugent,* 184 U.S. 1, 15, 22 S.Ct. 269, 275, 46 L.Ed. 405 (1902):

> 'But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt. The *bankruptcy court had the power to ascertain whether any basis for such claim actually existed* at the time of the filing of the petition.
>
> The court would then have been bound to enter the inquiry, and in so doing would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real, even though fraudulent and voidable, existed in fact, and so that it must decline to finally adjudicate on the

---

**13.** These cases are compiled and discussed in 5A Remington on Bankruptcy § 2350 (1953). To the same affect see *Coder v. Arts,* 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772 (1909) *Taubel–Scott–Kitzmiller Company v. Fox,* 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924), *Isaacs v. Hobbs Tie and Timber Company,* 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645 (1931), and *In re Baldwin,* 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020 (1934).

merits. If it erred in its rulings either way, its action would be subject to review.'

Remington, *supra,* § 2427 (emphasis added).

Remington further cited the case of *Taubel–Scott–Kitzmiller Co. v. Fox,* 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924), as follows:

'As every court must have power to determine, in the first instance, whether it has jurisdiction to proceed, the *bankruptcy court has, in every case, jurisdiction to determine whether it has possession, actual or constructive.* It may conclude, where it lacks actual possession, that the physical possession held by some other person is of such a nature that the property is constructively within with the possession of the court.'

Remington, *supra,* § 2427 (emphasis added).

Although Professor Remington concluded that the referee was not bound by averments of the respondent that are inadequate to disclose whether the respondent has a claim of legal substance, and in such cases the referee should not dismiss the proceedings without some further investigation such as production of records and documents, he warned of becoming "impaled by letting what could be a purely preliminary inquiry, at most, get out of hand." Remington, *supra,* § 2429.

█ Thus, it seems to be well-settled that due process does not prohibit a court with jurisdiction over property from conducting certain preliminary inquiries into adverse claims to the property so that it can determine whether the property is in its constructive possession, and thus determine whether it can go further.

Due process does not forbid certain inquests or inquiries that are at the fringes of a federal court's jurisdiction over citizens. The question raised in the case at bar is: What does the Eleventh Amendment require when the property is within the exclusive jurisdiction of the bankruptcy court and is in the custody of a bank, but the party asserting the adverse claim is a department of a state? In other words, may the bankruptcy court at least go so far as to determine whether the state's adverse claim is or is not merely "colorable"?

█ Although Justice Brennan's (and, later Justice Stevens') exhaustive efforts to convince the majority of the Supreme Court that the Eleventh Amendment applies only in diversity suits [14] have been unsuccessful, it seems to this writer that when Congress grants exclusive jurisdiction over property to a federal court and does so under authority other than the Fourteenth Amendment, then the Eleventh Amendment does not preclude a threshold inquest or inquiry into whether the state's claim of adverse interest in the property is more than colorable, even if that inquest or inquiry is initiated by a summons and complaint or other indicia of a "suit." It seems to this writer that the protection against such inquests or inquiries afforded the states under the Eleventh Amendment is not greater than the protection against the same afforded to citizens by due process of law. This is by no means a proposition of law, but is a proposition that seems self-evident. If the due process rights of individuals may be intruded upon mildly in the course of legitimate federal inquiry, then it does not seem arguable that the sovereign rights of a state may never be intruded upon at all, however mildly, in a legitimate federal inquiry, such as a bankruptcy trustee's search for assets.

Three arguments (at least) seem to compel this result. Firstly, the fact that there are exceptions to the Eleventh Amendment protections speaks, *vel non,* to the ability of a federal court to make inquiry into the applicability of the Eleventh Amendment. A federal court cannot determine whether sovereign immunity has been waived, or whether a case is suitable for application of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), or whether sovereign immunity has been suitably abrogated by Congress as to the states under the Fourteenth Amendment, without being able to preside over preliminary inquiries into the facts and theories surrounding the matter at bar.

**14.** See Justice Brennan's remarkable dissent in *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), and Justice Stevens' dissent in *Seminole.*

Secondly, we must recognize that a turnover complaint under 11 U.S.C. § 542 is absolutely nothing like the type of common law "suit" that the Eleventh Amendment's drafters and ratifiers knew of in 1795. Indeed, it is virtually an accident of history that such proceedings can be termed "actions" or "suits." It has been out of due process concerns and a desire to imitate civil practice in district courts that the various rulemakers have prescribed (most recently in Bankruptcy Rule 7001) that a proceeding "to recover ... property" would be governed by the Adversary Proceeding Rules, which Rules require all Adversary Proceedings to be begun by the service of a summons and complaint. By no means can it be said that the common law of pleading required this.[15] Apart from due process concerns, there is no reason why a bankruptcy trustee should be compelled to resort to a lawsuit to obtain possession of property that is within the exclusive jurisdiction of the federal court within which she serves. Justice Brennan quoted Justice Joseph Story as having written, in 1833, that "[i]t has been doubted, whether [the Eleventh Amendment] extends to cases of admiralty and maritime jurisdiction, where the proceeding is *in rem* and not *in personam.* There, the jurisdiction of the court is founded upon the possession of the thing; and if the state should interpose a claim for the property, it does not act merely in the character of a defendant, but as an actor." *Atascadero v. Scanlon,* 473 U.S. 234, 293, 105 S.Ct. 3142, 3173, 87 L.Ed.2d 171 (1985). The present writer does not suggest that no *in rem* actions implicate the Eleventh Amendment. Rather, title in the state, or at least possession by the state, should be at the base of a state's Eleventh Amendment demurrer. Here, the Debtor's money is in a bank represented by a "non-negotiable," "non-transferable" C.D. The State has neither title nor possession. (Hence, unlike in *Treasure Salvors,* the Trustee here could not know what "individuals" to name as parties-defendant. He has no choice but to name the D.E.C.)

Clearly, one could envision how the rulemakers might have thought (due process concerns aside) that a workable procedure would be for the trustee simply to "declare" such property (the money on deposit or the certificate of deposit) to be property of the estate, give notice of same, empower the trustee, by federal warrant, to seize it (or libel it, as in admiralty)

and then leave it to adverse claimants to be the "actors," *i.e.,* to be the ones who must take the initiative to assert a claim.[16] The Eleventh Amendment might not be implicated at all in such a process. If the seizure did not violate it, then any claim against the property would at most be a claim or suit "by the state" and not "against the state." If such *in rem* process would not violate the Eleventh Amendment when the state is a claimant, is a prohibited "suit" involved because the rulemakers have elected the cautious procedural path of summons and complaint? This writer suggests that even if nearly all "suits" require a summons and complaint, not every proceeding commenced by summons and complaint is a "suit" for Eleventh Amendment purposes.[17]

15. Admiralty might be the best common law analogy. As explained in *Florida Dept. of State v. Treasure Salvors,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), the Eleventh Amendment did not bar a U.S. District Court's "Warrant for Arrest In Rem" to seize artifacts in the possession of State officers. In Salvors, the Court cited prior authority to the effect that the doors of justice are not closed "against one legally entitled to possession, by the mere assertion of the defendants that they are entitled to possession for the State." *Id.* at 687, 102 S.Ct. at 3315. Also, "when such officers or agents assert that they are in rightful possession, they must make good that assertion when it is made to appear in a suit against them as individuals that the legal title and right of possession is in the plaintiff." *Id.* Here, the Debtor deposited the money repre-

sented by the C.D. and is the named owner of the C.D. along with the Landowner. Clearly, the Trustee's claims of title and right is not without basis.

16. That was, in fact, how civil asset forfeitures were handled under the drug laws of the United States, when this writer issued warrants as the Clerk of a U.S. District Court, and perhaps that is still the process.

17. Again, see the illustration above regarding contempts of court. See *In re Westefield,* 172 B.R. 178 (Bankr.W.D.N.Y.1994). Although contempt proceedings here are initiated by motion, the result should not be different if the Adversary Proceeding rules were made applicable thereto through rulemaking.

Lastly, there is a practical consideration that provides guidance in applying the prior two considerations. The case at bar is a simple one that does not present the numerous complex circumstances under which bankruptcy courts are asked to determine whether property is "property of the estate." Here, the case is a Chapter 7 liquidation case, not an operating case or a reorganization case. If this were an operating case or a reorganization case in which the question of whether certain property is or is not "property of the estate" is but one of many critical components of the trustee's or debtor's efforts to produce a benefit for creditors (and for taxpayers and employees and investors, etc.), must the reins of the reorganization or liquidation effort be turned over to a state forum simply because the state has asserted a yet unproven interest in the property in question? For example, often the question exists of whether the debtor has a valid leasehold interest in its manufacturing premises, but if a political subdivision of a state avers that the debtor does not have a valid lease, must the reorganizing case and the manufacturing processes halt until a state court decides either the merits of the issue or finds, for example, a waiver of immunity?

To be sure, a majority of the Supreme Court has consistently rejected Justice Brennan's argument that the Eleventh Amendment has no application to federal questions, the majority seemingly sanguine about leaving questions of interpretation of federal law to state courts. But the High Court has never, to this writer's knowledge, addressed that question in the context of an ongoing reorganization under the "Uniform Laws on the Subject of Bankruptcies throughout the United States," which Congress has adopted under Article I, § 8 of the U.S. Constitution, and which give a specialized federal court exclusive subject matter jurisdiction over the very property that is essential to the reorganization. 11 U.S.C. § 542 is a command,

applicable to "all entities," and must be obeyed for very good reasons.

## CONCLUSION

This Court holds that its conducting of sufficient inquiry to permit it to determine whether the C.D. is subject to § 542 turnover does not violate the Eleventh Amendment. To that extent, the State's motion to dismiss is denied. To the extent that the Complaint seeks more as against the State, the Complaint is dismissed.[18] A pre-trial scheduling conference pursuant to Rule 16 shall be set. This Court will structure discovery, briefing, and the like in the least intrusive manner possible with regard to the State's Eleventh Amendment right to its sovereign dignity, and will go no further than determining whether the C.D. is subject to turnover under 11 U.S.C. § 542. Although captioned as a suit, the matter shall proceed against the State only as an summary inquest or inquiry, and this Court will endeavor throughout to respect the balance commanded by *Idaho*. That balancing is achieved in the manner in which the so-called "suit" is conducted, and not in how the proceeding is captioned. Just as state courts may be entrusted with interpretation and application of federal laws, federal judicial officers may be entrusted with protecting states' rights under the Constitution and its amendments while federal officers such as a trustee determine whether the estate has any claim worth pursuing in a state court. The *Ex parte Young* doctrine is now of heightened importance, and it is for this Court to determine whether it applies here.

This is truly a modest case, and to elevate it to Constitutional dimension may seem arrogant on the part of counsel. But in a different context it has been suggested that what may be mistaken for arrogance is merely anxiousness. *See* Horgan, The End of Science, p. 5 (Broadway Books, New York 1997). Those who have devoted their professional lives and skills to federal law (and

---

18. For example, the Complaint seeks to extinguish the State's claim to the C.D. The Eleventh Amendment clearly prohibits that here, but the Bank can be ordered to turnover the C.D. over the State's objection and the State can either assert its claims here (and thereby waive sovereign immunity), or await an action in a state forum by the Trustee or the Bank or the Landowner, or seek leave here under 11 U.S.C. § 362 to pursue its own action against the Trustee or the property, in a forum the State chooses.

those whose jobs depend on the reorganizations and other activities, that the process contemplates) are anxious for instruction about what is Constitutionally permissible thereunder when a state will not cooperate.

SO ORDERED.