In re Norman Atwood HAVENS, Jr.,

In re John & Robin Crane,

In re George W. Pennell,

In re Charles L. Williams.

Bankruptcy Nos. 97–35225, 97–32086, 97–33355, 97–39522.

United States Bankruptcy Court, D. New Jersey.

Dec. 9, 1998.

See also 212 B.R. 808.

William H. Oliver, Jr., Asbury Park, NJ, for the debtors, Havens and Crane.

Daniel Straffi, Toms River, NJ, for debtor Pennell.

Marc Alan Krefetz, Dept. of Law and Public Safety—Division of Law, Trenton, NJ, for State of New Jersey.

Charles L. Williams, New Brunswick, NJ, pro se debtor.

## *PROCEDURAL HISTORY*

WILLIAM H. GINDIN, Chief Judge.

The primary issue presented in these cases is whether a debtor in bankruptcy can discharge Division of Motor Vehicle ("D.M.V.") insurance surcharges and the effect of *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) on that determination. Additionally, this court must determine whether the Automobile Full Insurance Underwriting Association, known as the Joint Underwriting Administration ("JUA"), and the Market Transition Facility ("MTF"), which are assigned to collect such surcharges, are arms of the state entitled to sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution. Further, assuming that Eleventh Amendment immunity does extend to the JUA and MTF, as alter-egos of the DMV (a state agency), this court must decide whether the *Ex parte Young*[1] doctrine applies to enjoin state officials, C. Richard Kamin, individually and in his capacity as D.M.V. Director, and Peter Verniero in his capacity as Attorney General ("state officials") from violating the federal law, i.e. the Bankruptcy Code. Additionally, this Court is called upon to decide whether the Division of Taxation, who filed a Proof of Claim in the Pennell bankruptcy case, waived the D.M.V.'s sovereign immunity under general principles of waiver.

### *FACTS*

Plaintiff Norman Atwood Havens, Jr. (hereinafter "Havens") filed a Chapter 13 petition on May 16, 1997. (Debtor's Brief in Supp. Of Confirmation at 1). Havens listed in his petition, as debts, the insurance sur-

---

1. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

charges owed to the JUA and MTF. Havens sued state officials and two auto insurance companies, the JUA and MTF, and sought injunctive relief and a declaratory judgment confirming that the insurance surcharges were properly discharged under bankruptcy law, namely § 524 of the Code. (Debtor' Brief at 2). Specifically, Havens requests that this Court enjoin the Defendants from continuing its collection of the insurance surcharge debt. Further, Havens seeks to enjoin Kamin, the director of D.M.V., from permanently suspending his license for failure to pay the insurance surcharge. (Id). The state of New Jersey was not directly sued.

Similarly, Plaintiffs, John and Robin Crane (the "Cranes"), in their complaint, sought an injunction and declaratory judgment against state officials regarding the dischargeability of insurance surcharges. The insurance surcharges were the result of traffic violations and convictions that occurred in municipal court. As of the date the petition was filed, the surcharges totaled $6,050. (See Crane Adv.Comp.; Ex. B). The D.M.V. also holds a judgment in the amount of $3,750. (Id.) Also, the Cranes seek to enjoin the state officials from suspending their licenses. (Crane Compliant, at 2).

In the same vein, Charles Williams, a *pro se* debtor, recently submitted a letter dated July 21, 1998 seeking a determination of the dischargeability of D.M.V. surcharges and fees. The Cranes, Havens, and Williams are collectively referred to as the Debtors throughout this opinion. Debtor Williams did not submit a brief addressing the legal issues; since he is *pro se*, however, this Court will consider the arguments raised by Havens and Crane applicable to his case since it involves common issues of fact and law.

Attorney William Oliver, Esq., submitted a brief on behalf of Norman Havens which also addressed and incorporated legal arguments on behalf of the Cranes. First, the Debtors maintain that their due process rights under the Fourteenth Amendment have been denied because they were not given the opportunity to litigate the issue of whether the JUA/MTF are arms of the state entitled to Eleventh Amendment sovereign immunity. Specifically, Debtors argue that they had minimal input to the evidence adduced from Mark Alan Krefetz, Deputy Attorney General for New Jersey, and should therefore be given the opportunity to conduct further discovery on the arm of the state issue. Recently, the bankruptcy court in *In re Kish*, 221 B.R. 118 (Bankr.D.N.J.1998) decided on remand that the JUA/MTF were arms of the state. This court for the reasons stated herein is bound by that determination.

Additionally, the Debtors argue that Kamin, as director of the D.M.V., cannot suspend their licenses as a means of enforcing the surcharges. See Havens Suppl. Letter Brief filed 8/10/98. Specifically, Debtors point to a recent Supreme Court case, *California v. Deep Sea Research*, 523 U.S. 491, 118 S.Ct. 1464, 149 L.Ed.2d 626 (1998), in support of its proposition. That case held that a federal court, which has *in rem* jurisdiction over an admiralty action, was not barred by the Eleventh Amendment where the *res* of the admiralty action is not within the state's possession. 523 U.S. at ——, 118 S.Ct. at 1470. Analogously, Debtors argue that the bankruptcy court has plenary jurisdiction to decide all issues in a bankruptcy proceeding, including dischargeability of a debt owed to the state, where no monetary judgment is sought by the debtor.

Alternatively, Debtors maintain that the state officials and state agencies, like the JUA and MTF, by virtue of the Supremacy Clause of the U.S. Constitution, are bound by the decisions of the bankruptcy court. Debtors cite *Hoffman v. Connecticut*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) in support. That case held that "... a state that filed no Proof of Claim would be bound like other creditors by discharge of bankruptcy, including unpaid taxes ... but would not be subject to monetary recovery." *(Id)*.

Finally, Debtors argue that, pursuant to the *Ex parte Young* doctrine, they are entitled to injunctive relief against the state officials, Kamin and Verniero, who suspended their driving privileges in an effort to enforce the insurance surcharge debt via suspension of drivers license, are violating federal law, particularly § 524 and § 1328 of the Bank-

ruptcy Code. Debtors contend that a debtor in bankruptcy, who is barred by the Eleventh Amendment from obtaining a monetary judgment against the state, nevertheless, may sue state officials for a determination that debt was discharged in bankruptcy and seek a prospective injunction protecting such discharge. *Id.* (citing *Schmitt v. Missouri Western State College (In re Schmitt)*, 220 B.R. 68 (Bankr.W.D.Mo.1998)).

In addition, Daniel Straffi, Esq., attorney for George Pennell, has sought a determination of the avoidance of D.M.V. surcharges. On January 27, 1998, a confirmation hearing was held in Debtor Pennell's Chapter 13 case. The State of New Jersey, via the D.M.V., objected to the confirmation of Debtor's Chapter 13 Plan on the grounds that the bankruptcy court did not have jurisdiction over it because it is entitled to sovereign immunity under the Eleventh Amendment. (See Pennell Letter Brief at 1). Specifically, Debtor's Plan, which was filed on April 4, 1997, sought to avoid a judgment lien held by the D.M.V. pursuant to § 522(f) of the Code. (Id.) Thereafter, on July 29, 1997, the New Jersey Division of Taxation ("NJDT") filed a Proof of Claim in the amount of $12,414. On or about December 28, 1997, Debtor filed a motion to reduce, disallow and/or expunge the tax claim. After negotiations between Debtor's counsel and state counsel, the State, through, Deputy Attorney General M. Narazanan, amended its claim and filed a reduced Proof of Claim in the amount of $2,568.16 and an administrative claim in the amount of $314.55. As a result, the Debtor withdrew its motion, which withdrawal was placed on the record on January 27, 1998.

Debtor Pennell contends that the State through NJDT waived its sovereign immunity under general principles of waiver, because it filed a Proof of Claim. Further, Debtor Pennell contends that the NJDT, by virtue of filing a Proof of Claim, also waived the sovereign immunity of the D.M.V. In essence, Debtor Pennell argues that one state agency can waive the immunity of another state agency. Debtor cites two state statutes in support: N.J.S.A. 52:18–29, which requires both agencies to pay over the trea-

sury all monies collected by them; and N.J.S.A. 52:18–20, which bars disbursement of funds except through the State treasurer. Debtor Pennell also cites *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–1361, 39 L.Ed.2d 662 (1974), for the general proposition that a state can waive its constitutional sovereign immunity under the Eleventh Amendment in the context of a particular controversy.

Conversely, the State, on behalf of the D.M.V., argues that filing a Proof of Claim does not serve as a blanket waiver of immunity. (See Pennell Brief Opp. dated 3/20/98). Specifically, the State contends that Debtor Pennell has failed to point to any logical relationship between the Proof of Claim filed by the Division of Taxation and the debt owed to the D.M.V.

## DISCUSSION

### A. Jurisdiction:

█ This court must first determine whether it has subject matter jurisdiction over the various claims and parties. Congress has vested bankruptcy courts with jurisdiction over four kinds of Title 11 matters: (1) cases under Title 11; (2) proceedings arising under Title 11; (3) proceedings arising in Title 11; and (4) proceedings related to Title 11. *See* 28 U.S.C.A. § 1334(b); *See Donaldson v. Bernstein*, 104 F.3d 547 (3d Cir.1997); *In re Lands End Leasing, Inc.*, 193 B.R. 426 (Bankr.D.N.J.1996). The matters before this court clearly involve matters arising under Title 11 pursuant to 11 U.S.C. § 524(a). Accordingly, this court has general jurisdiction over the Debtors' claims.

### B. Limits on Federal Jurisdiction:

█ Recently, the Supreme Court in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) defined limits on federal jurisdiction. Essentially, *Seminole* held that states or "arms of the state" may not be sued in federal courts because the state sovereign immunity under the Eleventh Amendment of the United States Constitution.[2] (Id.)

---

2. The Eleventh Amendment of the Constitution provides: "[t]he judicial power of the United

Additionally, the Supreme Court has held that Eleventh Amendment sovereign immunity defenses can be raised at anytime, even on appeal. *See Patsy v. Board of Regents,* 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982) (Supreme Court, in dicta, stated "that Eleventh Amendment is jurisdictional in the sense that it must be raised and decided by the Court on its own motion."). But see, *Wisconsin Dept. Of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (Court questioned a federal court's obligation to raise Eleventh Amendment immunity where none of the parties have raised it and held "[u]nless a State raises the matter, a court can ignore it.") *Id.* at ——, 118 S.Ct. at 2052. *Seminole* has also limited the jurisdiction bankruptcy courts can exercise over a State and its agencies. See *In re Sacred Heart Hospital of Norristown,* 133 F.3d 237 (3d Cir.1998) (holding that Congress, by enacting § 106(a), "unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity under the Bankruptcy Code."); *Matter of Fernandez,* 123 F.3d 241, 243 (5th Cir.1997) (same); *In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140, 1145 (4th Cir.1997), *cert. denied by, Schlossberg v. Maryland Comptroller of Treasury,* —— U.S. ——, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998) (same). See also, *In re Kish,* 212 B.R. 808 (D.N.J.1997) (Eleventh Amendment immunity may affect validity of debtor's discharge of D.M.V. insurance surcharges). In this instance, however, the state, via D.M.V. and other agencies, has chosen to assert its Eleventh Amendment sovereign immunity defense against the Debtors, who have sought to enforce the discharge of the insurance surcharges owed to them.

### 1. Scope of Eleventh Amendment:

■■■ The Eleventh Amendment immunity extends only to states, arms of the state or state officials or agents and does not extend to counties, municipal corporations or other independent agencies. *Mt. Healthy City School District Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *In re Decalcomania Mfg. Corp.,* 142 B.R. 670 (Bankr.D.N.J.1990). The Supreme Court in *Mt. Healthy City School District* held that the determination of the nature of a political entity will depend, in part, on state law. 429 U.S. at 280, 97 S.Ct. at 572. See *In re Kish,* 221 B.R. 118, 125 (quoting 36 *C.J.S. Federal Courts* § 50(1)) (". . . [q]uestion as to whether a particular state agency is entitled to immunity from federal jurisdiction must depend on the characteristics, capacities, powers, and immunities of such agency as defined by state law.") Furthermore, the party asserting sovereign immunity "bears the burden of proving its applicability." 221 B.R. at 125 (quoting *Christy v. Pennsylvania Turnpike Comm.,* 54 F.3d 1140, 1144 (3d Cir. 1995)).

### 2. Are the JUA/MTF Arms of the State?

■■ Recently, Judge Stripp in *In re Kish,* 221 B.R. 118 (Bankr.D.N.J.1998), addressed the issue of whether the JUA/MTF were arms of the state entitled to sovereign immunity under the Eleventh Amendment. As noted above, this determination depends upon its characterization under state law. The JUA, which was established in 1983 by

States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *U.S. Constit.Amend. XI.* The policy underlying the Eleventh Amendment is two-fold. First, each State is considered a sovereign entity within our federal system. *Seminole,* 517 U.S. 44, 116 S.Ct. 1114, 1121, 134 L.Ed.2d 252 *(quoting Hans v. Louisiana,* 134 U.S. 1, 11–14, 10 S.Ct. 504, 506, 33 L.Ed. 842, (1890)). Second, "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its [the states] consent." *Hans,* 134 U.S. at 13, 10 S.Ct. at 506 *(quoting The Federalist No. 81, p. 487 (C. Rossiter ed.*

1961) (A. Hamilton) (parentheses added)). *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 688–89, 121 L.Ed.2d 605 (1993) ("[t]he very object and purpose of the Eleventh Amendment was to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."); *Fennelly,* 212 B.R. at 63 (same); *In re Martinez,* 196 B.R. 225, 228 (D.P.R.1996) (same). *See also, Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 101, n. 11, 104 S.Ct. 900, 908, n. 11, 79 L.Ed.2d 67 (1984) (The Eleventh Amendment's general purpose is to foster states autonomy); *Fitchik v. New Jersey Transit Rail Operations, Inc.* 873 F.2d 655, 664 (3d Cir.1989) (same).

the New Jersey Automobile Full Insurance Availability Act, "is a non-profit association of automobile insurers created to provide market rate insurance to drivers who were unable to pay the high cost of insurance." *Id.* at 123 (quoting *In re Kish*, 204 B.R. 122, 128 ((Bankr.D.N.J.1997) [citing N.J.S.A. § 17:30E–1 to 17:30:E–24] )). The JUA received most of its income from premiums and investments. *Kish*, 204 B.R. at 123 (Bankr. D.N.J.1997) (citing N.J.S.A. 17:30E–8a). In March of 1990, the State legislature responded to the JUA's financial plight by enacting the Fair Automobile Insurance Reform Act ("Reform Act"), which was to reduce insurance costs for New Jersey drivers, transfer drivers who are insured by the JUA to a private market, and provide a mechanism to pay off the JUA's debts. 221 B.R. at 124 (citing N.J.S.A. §§ 17:33B–1 to 17:33B–63).

■■■ In determining whether the JUA and MTF are arms of the state, the court used the three part test which was outlined by the Third Circuit in *Peters v. Delaware River Port Auth.*, 16 F.3d 1346 (3d Cir.1994). The first part of the test requires the court to inquire "whether, in event the plaintiff prevails, the payment of the judgment would come from the state." 221 B.R. at 125 (citing *Peters*, 16 F.3d at 1350). Responsibility for payment of judgments is the most dispositive factor in determining whether the Eleventh Amendment extends to state agencies. See *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 45–46, 115 S.Ct. 394, 403, 130 L.Ed.2d 245 (1994); *Christy*, 54 F.3d at 1145; *Bolden v. Southeastern Pennsylvania Transp. Auth. v. Transport Workers Union of Philadelphia*, 953 F.2d 807 (3d Cir.1991); *Kovats v. Rutgers, the State Univ.*, 822 F.2d 1303 (3d Cir.1987). The funding factor includes three separate considerations: (1) whether payment would come from the state treasury; (2) whether the agency has sufficient funds to satisfy the obligation; and (3) whether the state has immunized itself from responsibility for the agency's debts. *Ibid.* The court in *Kish* found that the State was primarily responsible for the JUA's debts.

Specifically, the court found that any judgments against the JUA would be satisfied from an Automobile Insurance Guaranty Fund ("AIG")[3]. 221 B.R. at 126.

Furthermore, the court noted that there was no source other than the AIG fund of the State treasury, from which to pay judgments entered against JUA. The court conceded that the JUA would be able to satisfy a judgment entered against it because the Commissioner of Insurance had certified, as of March 1, 1996, that there were sufficient monies in the AIG fund to satisfy the JUA's obligations. 221 B.R. at 127. The court, upon review of the statutory structure of the JUA, also found that the State, although it initially established the JUA as a independent entity, did not immunize itself from payment of the debts of JUA by virtue of the AIG fund it created. 221 B.R. at 128.

In addition, the court looked to state law to determine whether the state treated the JUA as an independent entity or an arm of the state. 221 B.R. at 129. Particularly, the court found that the JUA, which is an unincorporated non-profit association, could be sued in its own name. With respect to the JUA's autonomy, however, the court held that the JUA, which was created by state statute, was not autonomous because of the significant control the State exercised over this entity. *Id.* at 130. For example, the approval of the plan of operation must be made by the Commissioner of Insurance and the State. Also, the State, through legislation, withdrew the JUA's ability to issue policies. *Id.*

In sum, after an balancing the *Christy* factors, the *Kish* court noted that the most important factor, in determining whether the JUA was an arm of the state, was whether a judgment against it would be paid by the state. 221 B.R. at 130. In that case, because the State treasury, via the AIG fund, was responsible for the obligations and debts of the JUA, the court held that it was an arm of the state and therefore entitled to Eleventh Amendment immunity. 221 B.R. at 131. See *In re Perez*, 220 B.R. 216 (Bankr.D.N.J.

---

**3.** Pursuant to N.J.S.A. § 17:33B–5(a) & (d), the AIG fund is a special non-lapsing fund within the General Treasury that was created under the Reform Act to satisfy the financial obligations of the JUA. *Kish*, 221 B.R. at 124.

1998) (holding that sovereign immunity extended to municipal judges because of the extensive amount of control the state had over their discretion in restoring or suspending driver licenses for violation of municipal parking violations); see also, *Matter of Kent,* 190 B.R. 196 (Bankr.D.N.J.1995) (JUA is an instrumentality of the state).

Conversely, the court in *Kish* held that the MTF was not entitled to Eleventh Amendment immunity because it was not an arm of the state. Pursuant to the Reform Act, the MTF was created to effect the orderly phase out of the JUA. 221 B.R. at 124. The MTF also issued insurance policies during the transition of the insured drivers to the private market from October 1, 1990 to Sept. 30, 1993. 221 B.R. at 124 (citing N.J.S.A. § 17:33B–11(c); Krefetz letter to Court dated 5/5/98). Specifically, the court found that the State was not primarily responsible for judgments entered against the MTF. 221 B.R. at 127. Based upon a review of the relevant statutes, the court found that a judgment entered against the MTF could be paid either from the AIG fund or from revenue paid to the MTF from member insurers, PLIGA (New Jersey Property–Liability Insurance Guaranty Association) assessments or bond sales. 221 B.R. at 126–127 (citing Senate Budget and Appropriations Comm. Statement to Senate, NO. 1250–L.1994, c. 57 (N.J. June 16, 1994); N.J.S.A. §§ 17:33B–5(c), 17:33B–11(d)(1); 34:1B–21.4). Additionally, the court found that a claim against the MTF could be paid from the GDPA.[4] Thus, none of the monies to be paid for judgments against the MTF appear to be satisfied from the State treasury. 221 B.R. at 127. Moreover, the court noted that the MTF, based on its financial condition, probably would be able to satisfy a judgment against them. *Id.* Additionally, it appears that the state has partially immunized itself from payment of MTF's debts because members of the MTF are responsible for the losses of the facility. 221 B.R. at 128 (citing N.J.S.A. § 17:33B–11).

The court also found that the State treats the MTF as a independent entity or a surrogate of the State because the MTF could be sued in its own name. 221 B.R. at 128. However, the court recognized that the MTF, which was originally run by the N.J. Commissioner of Insurance and members of the MTF, is currently under the sole control of the Insurance Commissioner. 221 B.R. at 130 (citing N.J.S.A. § 17:33B–11(g)). The Commissioner, who is the "chief executive officer of the states largest insurance company", is required to report to the Legislature and the Governor regarding the financial state of the MTF. *Id.* (citing N.J.S.A. § 17:33B–3). Nevertheless, the court held that the State, despite the degree of control it exercised over the MTF, was not primarily responsible for the obligations incurred by the MTF. Ultimately, the court, determining that the funding factor outweighed all other factors, held that the MTF was not an arm of the state and therefore not entitled to Eleventh Amendment sovereign immunity. Accordingly, in the instant case, this court will defer to the ruling in *Kish* with respect to its determination of the status of the JUA/MTF.

Ultimately, the court in *Kish* determined that the case against the JUA and MTF must be dismissed because they are not creditors of the debtor. 221 B.R. at 132. Specifically, the court rejected the debtor's argument that the D.M.V. was merely a collection agent for the JUA and MTF. *Id.* at 133. Upon review of the statutory structure of N.J.S.A. § 17:29A–35(b)(2), the court found that the D.M.V. actually bills and collects the surcharges and that if a party did not pay the D.M.V., only that agency could suspend a persons license. *Id.* Accordingly, the court held that the JUA and MTF did not have a right to payment from the debtor and therefore did not have a valid claim. See 221 B.R. at 132 (quoting *In re M. Frenville Co., Inc.,* 744 F.2d 332, 336–37 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (holding that threshold

---

4. The GDPA, which is the Good Driver Protection Act, was enacted by the state legislature to pay claims against the MTF. See N.J.S.A. § 34:1B–21.1 through 34:1B–21.15. The GDPA developed a funding plan which was based on three sources: (1) $439 million paid by MTF member insurers pursuant to court order, (2) $665 million from the sales of MTF bonds; and (3) $320 million in assessments to be paid by PLIGA members. See 221 B.R. at 124, 127.

determination of whether a claim existed depended on whether or not there was a right to payment under state law)).

## C. Violation of Due Process:

■ Debtors, Havens and Crane, argue that this court, by relying on the *Kish* decision, violates their due process[5] rights because they were not given the opportunity to conduct further discovery on the status of the JUA and MTF. Debtors, who cited no case law in support of its proposition, urge this court to give them an opportunity to supplement the evidence adduced from Mr. Krefetz in *Kish* with respect to the status of the JUA/MTF. This court, however, holds that the issues raised by Debtors, particularly the status of the JUA/MTF, are precluded by doctrines of issue preclusion and collateral estoppel.

### 1. Collateral estoppel/Claim Preclusion defeats Debtors Due Process claim:

■ The Third Circuit, in *Bradley v. Pittsburgh Board of Education*, 913 F.2d 1064, 1070 (3d Cir.1990) described the differences between issue preclusion and claim preclusion, which are commonly referred to as *res judicata*. Claim preclusion gives a dispositive effect to a prior judgment if the particular issue, albeit not litigated in the prior action, could have been raised. *Id.* (quoting *McNasby v. Crown Cork & Seal Co.*, 888 F.2d 270, 275 (3d Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990)). On the other hand, issue preclusion, commonly referred to as collateral estoppel, "bars relitigation only of an issue identical to that adjudicated in the prior action." *Id.* (quoting *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.1988)). Accordingly, "once an issue is actually and necessarily determined by a court of competent jurisdic-

tion, that determination is conclusive in subsequent cases based on a different cause of action involving a party to the prior litigation." *See In re 2435 Plainfield Avenue, Inc.*, 223 B.R. 440, 453 (Bankr.D.N.J.1998) (quoting *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). The purpose of issue preclusion is "to prevent litigation over issues that ... were actually decided in a prior suit in order to foster 'judicial economy, predictability and freedom from harassment for litigants.' " *2435 Plainfield Avenue*, 223 B.R. 440 (quoting *Sibert v. Phelan*, 901 F.Supp. 183, 186 (D.N.J.1995)).

■ In addition, courts have held that the principles of issue preclusion or collateral estoppel are applicable in bankruptcy proceedings, even when the previous adjudication occurred in state court. *Plainfield Avenue*, 223 B.R. 440 (citing *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997)). Moreover, federal courts, in deciding preclusion issues, must apply the preclusion law of the jurisdiction. 223 B.R. 440 (citing *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 591 A.2d 592, 598 (1991)). The standards for collateral estoppel were set forth by the New Jersey Supreme Court in *Matter of Estate of Dawson*, 136, N.J. 1, 136 N.J. 1, 641 A.2d 1026 (1994). The party, or court, asserting this principle must demonstrate: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party in the earlier proceeding. 136 N.J. at 20–21, 641 A.2d at 1034–35.

---

**5.** Section One of the Fourteenth Amendment of the U.S. Constitution provides in relevant part: All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any

person within its jurisdiction the equal protection of the laws.
U.S. Const. XIV Amend., § 1.
 Due process of law, in the context of judicial proceedings, is defined as "the course of legal proceedings according to the rules and principles established in our system of jurisprudence for protection and enforcement of private rights." See *Scott v. McNeal*, 154 U.S. 34, 14 S.Ct. 1108, 38 L.Ed. 896 (1894).

In the instant case, it appears that Debtors satisfy four of the five prongs of issue preclusion or collateral estoppel. Debtors ask this Court to permit them to conduct further discovery as to the status of the JUA/MTF. This determination, Debtors argue, is germane to the validity of the dischargeability of D.M.V. surcharges in bankruptcy because the D.M.V., via the JUA and MTF, have now asserted its Eleventh Amendment sovereign immunity defense. As noted above, the bankruptcy court in this jurisdiction recently held that the JUA, but not the MTF, was an arm of the state. See *Kish*, 221 B.R. 118 (Bankr.D.N.J.1998). Accordingly, this court finds that the issue regarding the status of the JUA/MTF may not be relitigated because it is foreclosed by the doctrines of collateral estoppel and *res judicata*. Under the first prong of the test, it appears that the issue to be decided in this case, i.e. whether JUA/MTF are arms of the state in the context of sovereign immunity, is identical to the issue decided in a prior proceeding (*Kish*). Second, the issue regarding the status of JUA/MTF was actually litigated in a prior proceeding. Third, the bankruptcy court has issued a final judgment on the merits in holding that the debtor in *Kish* could not assert any claims against the JUA because it is not amenable to the jurisdiction of the bankruptcy court by virtue of the Eleventh Amendment.[6] Additionally, that court held that the debtor's discharge claims against MTF were possible because it was not an arm of the state entitled to sovereign immunity. Under the fourth prong, it appears that the determination of the status of the JUA/MTF was essential to the prior judgment in that the status of both entities were germane to the validity of the discharge of D.M.V. debts. It appears, however, that the last prong, the same party or privity requirement may not be satisfied. Particu-

larly, the Debtors in this case are not the same debtors in *Kish*, nor were they in privity with the debtors in *Kish*. This court, however, finds that the determination of the status of the JUA/MTF applies to all debtors in bankruptcy, irrespective of whether or not that debtor was actually a party in the *Kish* case. In light of judicial economy considerations outlined by the Third Circuit, this court holds that the Debtors are collaterally estopped from raising the issue of the status of the JUA/MTF.

Alternatively, this court finds that the Debtors in this case are precluded from relitigating the status of the JUA/MTF by collateral estoppel and/or issue preclusion. Specifically, the issues raised by Debtors concerning the status of the JUA/MTF, and the information it hopes to obtain through further discovery of this issue could have been raised in the prior action, i.e. *Kish*. The Debtors attorney, who initiated this adversary proceeding sometime in January 1998, should have been aware of the remand status of *Kish*, which was decided in May of 1998. Further, the Debtors' attorney could have chosen to intervene pursuant to Federal Rule of Bankruptcy Procedure 7024.[7] Accordingly, because there exist common questions of fact and law in this case and *Kish*, namely the issue of whether the JUA/MTF are arms of the state entitled to Eleventh Amendment protection, this court finds that the Debtors in this instance are precluded from relitigating this issue under collateral estoppel.

**D. Exceptions to Eleventh Amendment Immunity:**

**1. General Waiver of Sovereign Immunity:**

Debtor Pennell argues that the D.M.V., by way of the proof of claim filed by

6. As in *Kish*, this court will consider any exceptions that may apply to waiving sovereign immunity, such as general waiver principles or the *Ex parte Young* doctrine. However, this court believes that the determination as to the status of the JUA/MTF have been decided by a competent court, and are now foreclosed from relitigation.

7. Federal Rule of Bankruptcy Procedure 7024 provides that Federal Rule 24 shall apply in

adversary proceeding. Federal Rule 24(b) Permissive Intervention, provides:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or
(2) when an applicants claim or defense and the main action have a question of law or fact in common. . . .

Fed. Rule of Civil Procedure 24(b).

the NJDT, waived its sovereign immunity under the Eleventh Amendment. The scope of the Eleventh Amendment only applies to "suits commenced or prosecuted against one of the United States." *U.S. Constit. Amend.* XI. A state, however, can waive it sovereign immunity under general principles of waiver. The Fourth Circuit in *Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140 (4th Cir.1997) held that "when a state authorizes its officials to voluntarily invoke federal process in a federal forum, the state thereby consents to the federal forum's rules of procedure and may not invoke sovereign immunity to protect itself against the interposition of defenses to its action." 119 F.3d at 1148. See *In re Fennelly,* 212 B.R. 61, 63 (D.N.J.1997) (citing *Petty v. Tennessee–Missouri Bridge Comm'n,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959)) ("[w]here a state consents to being used, neither the Eleventh Amendment, nor the doctrine of sovereign immunity is a bar.") As a result, the court in *Creative* held that " . . . . to the extent a defendant's assertions in a state-instituted federal action, including those made with regard to a state-filed proof of claim in a bankruptcy action, amount to a compulsory counterclaim, a state has waived any Eleventh Amendment immunity against that counterclaim . . ." 119 F.3d at 1148. That court reasoned that it would violate "the fundamental fairness of judicial process to allow a state", who voluntarily enters a federal forum, "to proceed affirmatively in federal court and at the same time strip the defendant of valid defenses because it might be construed as actions *against* the state." 119 F.3d at 1148. See *In re Value–Added Communications, Inc.,* 216 B.R. 547, 550 (Bankr.N.D.Tex.1997) (holding that, irrespective of the constitutionality of § 106, the State of New York, who entered into a contractual relationship with debtor and voluntarily filed a proof of claim for fees arising from that contractual relationship, waived its sovereign immunity).

■■■■ Courts, however, have held that a state may waive its sovereign immunity under common law, yet retain its Eleventh Amendment immunity under federal law. See *Magnolia Venture Capital Corp. v. Prudential Securities, Inc.,* 151 F.3d 439, 443

(5th Cir.1998) (citing *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 306, 110 S.Ct. 1868, 1873, 109 L.Ed.2d 264 (1990)). Therefore, a "states consent [to suit in federal court] must be unequivocally expressed." *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984)). Additionally, a state official must have clear authority, as expressed by the general policy in the (states) Constitution, statutes, and decisions, to waive a states' Eleventh Amendment immunity. *Id.* at 443 (citing *Ford Motor Co., v. Dep't of Treasury,* 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945)) (parenthetical added).

■■■■ In determining whether general waiver exists, courts look to the standards used to identify compulsory counterclaims under Federal Rule of Civil Procedure 13(a), i.e. the same transaction or occurrence test. *Sacred Heart,* 204 B.R. 132, 141 (E.D.Pa. 1997) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992)). Further, the Third Circuit has held that a claim will be considered a compulsory counterclaim if that claim "bears a logical relationship" to the opposing party's claim. *In re University Med. Ctr.,* 973 F.2d 1065, 1086 (3d Cir.1992). Thus, a counterclaim is logically related "when it arises out of the same aggregate set of operative facts which constitutes the original claim." *In re Value–Added Communications, Inc.* 224 B.R. 354, 1998 WL 554261, *4 (N.D.Tex.) (citing *Plant v. Blazer Finan. Servs.,* 598 F.2d 1357, 1360 (5th Cir.1979)).

■■■■ Further, courts have recognized the ability of one (state) agency to waive immunity for another. Any waiver, however, is limited to the adjudication of the particular state agency's claim along with any counterclaims arising out of the same transaction or occurrence. See *Value–Added,* 224 B.R. 354, 357 (N.D.Tex.) (citing *White v. Shalala (In re Pace Enterprises of Columbia, Inc.),* 171 B.R. 444, 445 (Bankr.D.C.1994)). To that end, the Supreme Court has held that filing a proof of claim in a bankruptcy case can act as a general waiver of immunity, particularly when a debtor's claims bear a logical rela-

tionship to the proof of claim. See *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504, *reh'g denied*, 330 U.S. 853, 67 S.Ct. 768, 91 L.Ed. 1296 (1947) (overruling an Eleventh Amendment objection to the adjudication of the validity and priority of lien because the state had filed proof of claim.); see also, *AER–Aerotron, Inc. v. Texas Dep't of Transp.*, 104 F.3d 677, 680 (4th Cir.1997) (court held that, even in light of *Seminole*, "filing a formal proof of claim still acts as a waiver of immunity with regard to claims of the debtor arising out of the same transaction."); *Creative Goldsmiths*, 119 F.3d at 1148–9 (same); *Rose v. U.S. Department of Education*, 215 B.R. 755, 761–62 (Bankr. W.D.Mo.1997) (same). Accord *In re NVR, L.P.*, 206 B.R. 831, 851 (Bankr.E.D.Va.1997), *aff'd by, Clerk of Circuit Court for Anne Arundel County v. NVR Homes, Inc.*, 222 B.R. 514 (E.D.Va.1998) (bankruptcy court held that state waived its sovereign immunity defense because it filed a proof of proof of claim, with regard to a tax debt, against the debtors). But see, *New Jersey v. Mocco*, 206 B.R. 691, 693 (D.N.J.1997) (court, in dicta, noted that state can retain its sovereign immunity defense even where it filed a proof of claim).

■ In this case, the proof of claim filed by the NJDT, not the DMV, does bear a logical relationship to the Debtor's discharge of the tax claim pursuant to § 524 and/or § 1328 of the Code. As set forth in *Creative Goldsmiths, supra*, this court finds that the Debtor Pennell's motion to discharge the tax claim is tantamount to a compulsory counterclaim because it bears a logical relationship to the claim filed by the NJDT. This court therefore holds that it would be unfair to allow the NJDT "to proceed affirmatively in federal court and at the same time strip the defendant (Debtor) of valid defenses because it might be construed as actions *against* the state." *Creative Goldsmiths*, 119 F.3d at 1148. Accordingly, this court finds that the NJDT, at least with respect to any claims

filed on its own behalf, has waived its sovereign immunity.

■ Next, this court must consider whether the D.M.V. waived its sovereign immunity under general principles of waiver by virtue of the NJDT filing a proof of claim. Debtor points to N.J.S.A. 52:18–29[8], which requires both entities to pay monies over into the general treasury, as support for its contention that the Division of Taxation has the authority waive immunity on behalf of the D.M.V. There is nothing in this statute (N.J.S.A.52:18–29), however, which suggests the ability of the Department of Taxation to waive the sovereign immunity of another state entity. Nevertheless, there are some jurisdictions that recognize the ability of one state agency to waive the immunity of another. See *Value–Added*, 224 B.R. 354 (N.D.Tex.). The Debtor in this case, however, fails to demonstrate how the debt owed to the D.M.V. arises out of the "same aggregate set of operative facts which constitutes the original claim" filed by the NJDT. *Id.* More importantly, as noted earlier, there is no indication that the D.M.V. filed a proof of claim and therefore waived its sovereign immunity under general principles of waiver. Accordingly, Debtors motion to avoid D.M.V.'s claim is denied. Despite this, as discussed in detail below, Debtor Pennell may have a successful *Ex parte Young* claim against the D.M.V.'s sovereign immunity defense under the Eleventh Amendment.

3. **Eleventh Amendment and Bankruptcy Discharge:**

The Third Circuit has not explicitly ruled on the issue of whether a state entity, who does not file a proof of claim, can assert an Eleventh Amendment sovereign immunity defense against a debtor's attempt to discharge a debt pursuant to § 524(a) et seq. of the Code. Nevertheless, the effect of discharge operates to (1) "void any judgment at any time obtained, to the extent such judgment is a determination of personal liability

---

**8.** N.J.S.A. 52:18–29, Monthly payment of state moneys into treasury, disbursement, motor vehicle department, provides in relevant part:

"All moneys of the state collected or received by any state institution, board, commission,

department, ... from any source ... shall be aid into the state treasury no later than the tenth day of the month ..."

N.J.S.A. 52:18–29 (West, pocket part 1998).

of the debtor; (2) operates as an injunction against the commencement or continuation of an action ... to collect, recover or offset any such debt as a personal liability of the debtor ..." 11 U.S.C. § 524(a)(1) and (2).[9]

Recently, the Fifth Circuit in *State of Texas, By and Through Bd. of Regents University of Texas System v. Walker*, 142 F.3d 813 (5th Cir.1998) addressed the issue of whether the Eleventh Amendment prevents discharge of a debt owed to a state in a bankruptcy proceeding in which the state did not participate. 142 F.3d at 820. In *Walker*, a university professor attempted to discharge a debt owed to the State of Texas, via the University, involving state law claims of improper retention of professional fees. The state argued that, although it was not named as a defendant in the bankruptcy case, "it was an indirect party because its legal rights were adjudicated and altered when the bankruptcy court discharged Walker's debt." 142 F.3d at 821. As a result, the effect of the discharge would restrain the state from collecting on the debt or force it file a proof of claim, which could then be construed as a waiver of its sovereign immunity. 142 F.3d at 822.

The *Walker* court rejected the underlying assumption of the state's argument, which equated a bankruptcy case with a suit against the state. 142 F.3d at 822. The court noted that bankruptcy law can modify a state's collection rights, but at the same time, it can give the state the opportunity to share in the collective recovery. *Id.* Thus, the court held that "[b]ankruptcy operates by virtue of the Supremacy Clause without forcing the state to submit to suit in federal court." *Id.* As a result, the court found that the State, via the University of Texas, was not allowed to assert an Eleventh Amendment Sovereign immunity defense against the discharge of its debts because it "was never hauled into federal court against its

will ..." *Id.* See *In re Burkhardt*, 220 B.R. 837, 847 (Bankr.D.N.J.1998) (court held that it had subject matter jurisdiction to consider the discharge of motor vehicle surcharges and fines listed by the debtor in the context of confirmation of a Chapter 13 Plan because such confirmation, which resulted in discharge of debt pursuant to sections 1325 and 1328 of the Code, did not involve a suit in "law or equity" against the state.) *Id.* at 847 (quoting U.S. Const. XI. Amend.). See also, *California v. Deep Sea Research, Inc., et. al.*, 523 U.S. 491, ——, 118 S.Ct. 1464, 1473, 149 L.Ed.2d 626 (1998) (based on long standing precedent, Court held that Eleventh Amendment sovereign immunity does not bar a federal court's admiralty *in rem* jurisdiction over vessels that are not in the possession of the state.); Cf., *In re O'Brien*, 216 B.R. 731, 737 (Bankr.D.Vt.1998) (holding that sovereign immunity was not applicable to preference action in because bankruptcy court has exclusive jurisdiction pursuant to § 1334(e), over all property of the debtor's estate. Moreover, court noted that the Eleventh Amendment was not violated because Vermont is not compelled to appear and defend, and can "choose to stay home.") *Id.* (quoting *Freeman v. Alderson*, 119 U.S. 185, 189, 7 S.Ct. 165, 168, 30 L.Ed. 372 (1886)). Accord, *Perez*, 220 B.R. at 224 (bankruptcy courts, pursuant to § 525 anti-discrimination provision and § 105, have the power to restore a driver's license in accordance with a Chapter 13 Plan).

Conversely, courts in this jurisdiction have held that *Seminole* would permit a state entity to assert an Eleventh Amendment immunity defense against a discharge claim of debtor. See *In re Kish*, 212 B.R. 808, 817 (D.N.J.1997) (court, in dicta, stated that if the bankruptcy court's determination of the status of JUA/MTF were to implicate the D.M.V.'s legal rights, its finding that the surcharges were a non-dischargeable govern-

---

9. Section 1328 provides for broad discharge of a Chapter 13 debtor who successfully completes payments under a Chapter 13 Plan. Section 1328 provides in pertinent part:

(A) ... unless the court approve of a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all

debts provided by the plan or disallowed under section 502 ... except any debt—
(1) provided for under section 1322(b)(5) ...
(2) of the kind specified in paragraph (5), (8) or (9) of section 523(a) ... or;
(3) for restitution, or a criminal fine, included in a sentence on the debtor ...
11 U.S.C. § 1328(A).

mental penalty would be reversed for lack of subject matter jurisdiction under *Seminole*.)

Accordingly, in light of the Third Circuit holdings in *Sacred Heart*, this court is reluctant to extend the holdings in *Walker* to mean that a bankruptcy court can properly exercise jurisdiction over a state entity, who has not filed a proof of claim or otherwise consented to federal jurisdiction, especially where the state asserts its right to sovereign immunity under the Eleventh Amendment. This holding, however, as discussed in detail below, would not preclude Debtors from enjoining a state official from violating the federal laws of the Bankruptcy Code under the *Ex parte Young* doctrine.

#### 4. Ex parte Young Doctrine:

The *Ex Parte Young* doctrine, which is to be applied on a case-by-case basis, is a very narrow exception to sovereign immunity set forth in the Eleventh Amendment. *Seminole*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252. The Supreme Court in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), enunciated what is now known as the *Ex parte Young* doctrine. Specifically, the Court held that an individual may sue a state official for prospective equitable relief requiring the state official to cease violating federal law, even if the state itself is immune from suit under the Eleventh Amendment. *Id.* at 155–66, 28 S.Ct. at 452–53. See generally, *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 908; *Sacred Heart*, 204 B.R. at 137; *see Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 (9th Cir.1997) (alleged violation of Lanham Act by state official). The *Ex parte Young* doctrine only applies to prospective relief and does not allow judgments against state officials based on some past violation of federal law. *Kish*, 221 B.R. at 134 (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993)).

In the context of D.M.V. surcharge cases, the court in *Kish* held that the *Ex parte Young* exception could apply to enjoin two state officials, Kamin, in his capacity as director of the D.M.V., and Verniero, in his capacity as Attorney General. In that case,

the debtors sought prospective relief to enjoin these state officials from violating federal laws, i.e. various provisions of the Bankruptcy Code (§ 524, § 525, § 1328). The debtors argued that Kamin and Verniero, by continuing to demand payment of insurance surcharges and/or suspending or refusing to restore their licenses are in violation of federal bankruptcy law provisions governing discharge. However, the State argued that the *Ex parte Young* doctrine was inapplicable because debtors injunctive relief request is a "disguised suit for damages." 221 B.R. at 137.

Specifically, the court held that the debtors could demand injunctive relief against the state officials under *Ex parte Young* because this was not a request for payment from the state. 221 B.R. at 138. The court recognized the burden of the discharged debt on the state treasury, but noted that "it is not a requisite of the *Young* doctrine that an injunction have no effect on the treasury." *Id.* (quoting *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974)). Further, the court found that any effect on the State treasury by the debtors would be ancillary. 221 B.R. at 138. Accordingly, the court held that, under *Ex parte Young*, it could exercise jurisdiction over the D.M.V. and its instrumentalities (i.e. the JUA) and that Verniero and Kamin could be enjoined from violating federal law by attempting to collect a discharged debt and discriminating against debtors in refusing to reinstate drivers licenses due to failure to pay outstanding D.M.V. surcharges. *Id.* See *In Matter of Guiding Light Corp.*, 213 B.R. 489, 491 (Bankr.E.D.La.1997) (court held that a debtor may bring an action against state official, the Secretary of Department of Health, under the *Young* exception for enforcement of provisions under the Bankruptcy Code). *Cf., In re Neary*, 220 B.R. 864, 869 (Bankr.E.D.Pa.1998) (1997) (court recognized possible expanded applicability of the *Ex parte Young* doctrine, especially in cases where no available forum for vindication of federal rights. Court, however, held that the *Ex parte Young* doctrine was not applicable because the injunctive suit

was brought against state entity, not state officials.)

Finally, the court in *Kish* held that the determination of whether a government officials response to a debtor's failure to pay surcharges violates federal law would, in part, depend upon the nature of the debt and other factors. See *e.g. In re Curtin*, 206 B.R. 694, 697 (Bankr.D.N.J.1996) (court concluded that debtor had an obligation to pay D.M.V. surcharges, which were in connection with operating a vehicle under the influence and driving while under a suspension, because this debt was non-dischargeable under § 523(a)(7) civil penalty exception. The court, however, held that the debtor was not obligated to pay administrative costs for the costs of collection). Cf. *In re Cuevas*, 205 B.R. 457 (Bankr.D.N.J.1997) (incarceration for failure to pay fines held to be a continuation of criminal proceedings and therefore excepted from automatic stay pursuant to § 363(b)(1)).

A recent Supreme Court decision, however, has limited the applicability of the *Ex parte Young* doctrine. See *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1998) At the outset, the Court recognized that the State has a real interest, i.e. the promotion of state policies and procedures, in suits commenced against state officials, even if they were named and served as individuals. 521 U.S. at 268–70, 117 S.Ct. at 2034. Thus, the court stated: "[t]o interpret *Young* to permit a federal court-action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle ... that Eleventh Amendment immunity represents a real limitation on a federal court's federal question jurisdiction." *Id.*

Additionally, the Court noted that there are generally only two instances where a federal court will apply the *Ex parte Young* doctrine: (1) where there is no state forum available to vindicate the federal interests, thereby placing upon an Article III court the special obligation to ensure the supremacy of federal statutory and constitutional law; and

(2) where prospective relief is sought against individual state officers in a federal forum based on a federal right. *Id.* at 277, 117 S.Ct. at 2038. The latter is based upon the notion that federal courts can assure the peaceful resolution of disputes between States. *Id.* at 275, 117 S.Ct. at 2037 (citing *South Dakota v. North Carolina*, 192 U.S. 286, 24 S.Ct. 269, 48 L.Ed. 448 (1904)), and suits initiated by the United States against States. *Id.* (citing *U.S. v. State of Texas*, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892)). The Court, however, limited the expansiveness of the second prong and held that state courts are adequate forums for resolving federal questions. Specifically, the court stated: "[i]nterpretation of federal law is the proprietary concern of the state, as well as federal courts. It is the right and duty of the States, within their own judiciaries, to interpret and follow the Constitution and all laws enacted pursuant to it ..." 521 U.S. at 275, 117 S.Ct. at 2037, 138 L.Ed.2d 438. Again, the Court recognized the states strong interests: "states courts and agencies work to elaborate an administrative law designed to reflect the State's own rules and traditions concerning the scope of judicial review and administrative discretion." *Id.* Therefore, the court held that "where ... parties invoke federal principles to challenge state administrative action, the courts of the State have a strong interest in integrating those sources of law within their own system for the proper judicial control of state officials." *Id.* at 276, 117 S.Ct. at 2038.

In this case, Debtors urge this court to apply the *Ex parte Young* doctrine to enjoin state officials, Verniero and Kamin, from violating federal bankruptcy laws. Specifically, Debtors contend that the state officials could be restrained from enforcing penalties against them for nonpayment of the insurance surcharges because these debts were effectively discharged pursuant to §§ 727 and 1328 of the Code. Thus, Debtors argue that the state officials, in attempting to enforce the payment of insurance surcharges by suspending their licenses, are violating federal bankruptcy laws.

Recent Supreme Court precedent, however, indicates that the applicability of the *Ex*

*parte Young* doctrine is limited. See *Couer d'Alene,* supra. Specifically, assuming the State does not invoke its common law immunity against the Debtors in state court, it appears that there is a state forum available to vindicate the federal interests, i.e. state enforcement of bankruptcy laws. Further, there is no indication that a state court lacks the ability to resolve questions of federal law, namely the applicability of the discharge provisions of §§ 727 and 1328 of the Code to the D.M.V. surcharges. Additionally, this court recognizes the State's strong interest in promoting the integration of federal principles, i.e. the applicability of the *Ex parte Young* doctrine, with state judicial scopes of review and administrative discretion, i.e. the validity of D.M.V. administrative fines and penalties. Based on the foregoing, this court holds that the Debtors may not invoke federal jurisdiction over the D.M.V. by virtue of the *Ex parte Young* doctrine alone.

5. **Supremacy Clause:**

 The Supremacy Clause makes federal law "the supreme Law of the Land". U.S.C.A., Const. Art. 6, cl. 2. Consequently, a state court that is confronted with issues of federal law is bound by the Supremacy Clause to apply federal law, in resolving those issues. Thus state courts are charged with "a coordinate responsibility to enforce that law according to their regular procedure." *Howlett v. Rose,* 496 U.S. 356, 367, 110 S.Ct. 2430, 2438, 110 L.Ed.2d 332 (1990) (quoting *Claflin v. Houseman,* 93 U.S. 130, 136–137, 23 L.Ed. 833 (1876). See *Douglas v. New York, N.H. & H.R. Co.,* 279 U.S. 377, 387–388, 49 S.Ct. 355, 356, 73 L.Ed. 747 (1929) (a state court may not deny a federal right when the parties in controversy are properly before it in absence of a valid excuse predicated upon a neutral rule of judicial administration). See *Howlett,* 496 U.S. at 370, 110 S.Ct. at 2441 (recognizing three occasions where a state court has a valid excuse for refusing to entertain a federal cause of action: (1) state statute permits discretionary dismissal of federal or state claims where neither the plaintiff nor defendant was a resident of forum state; (2) grounds for the cause of action arose outside of court's territorial jurisdiction; (3) the ability of state courts to apply, in a nondiscriminatory fashion, the doctrine of *forum non conveniens* to bar adjudication of claim.)) (internal citations omitted).

To that end, the Supreme Court has held that the Supremacy Clause, which imposes a duty on state court to enforce federal law, trumps sovereign immunity defenses asserted in a state court action. See *Hilton v. South Carolina Public Railways, Comm'n.,* 502 U.S. 197, 203–05, 112 S.Ct. 560, 564–65, 116 L.Ed.2d 560 (1991) (holding that Federal Employer's Liability Act (FELA) created a valid cause of action against state-owned railroad which is fully enforceable in state court by virtue of Supremacy Clause. The Court reasoned that "to confer immunity from state-court suit would strip all FELA and Jones Act protection from workers employed by the State."); *Howlett,* 496 U.S. at 375, 110 S.Ct. at 2430 (holding that a Florida state court's refusal to entertain a § 1983 claim against the school board on sovereign immunity grounds violated that Supremacy Clause when the court entertains similar state-law actions against state defendants). See also, *Jacoby v. Arkansas Dept. of Educ., Vocation and Technical Educ. Div.,* 331 Ark. 508, 962 S.W.2d 773, 775 (1998) (holding that state is not immune from suit under the Fair Labor Standards Act (FLSA) in Alabama state court even though there was a state constitution provision which provided for immunity in state court.); *Bunch v. Robinson,* 122 Md. App. 437, 712 A.2d 585, 595 (1998), *cert. granted by, Robinson v. Bunch,* 351 Md. 285, 718 A.2d 234 (1998) (court held that *stare decisis* takes precedence over any desire for symmetry between federal and state liability therefore FLSA applies to states as did FELA in *Hilton.*)

 The Supreme Court has not explicitly ruled on the applicability of the Supremacy Clause in the context of the Bankruptcy Code. Nevertheless, this court must infer that the Supremacy Clause, equally applies to the Code, which is also federal law. It must be kept in mind that bankruptcy jurisdiction is "original but not exclusive" and the bankruptcy court may always abstain from the exercise thereof. See 28 U.S.C. § 1334(b) and (c). Accordingly, in this case,

**630**

a state court would be required to apply federal law in determining the validity of the D.M.V. surcharges against the Debtors. Further, this court recognizes that if a state court were to give deference to state law sovereign immunity and also refuse to enforce the discharge provisions of the Bankruptcy Code it would "strip" the Debtors of the fresh start protections afforded to them under the Code via the discharge provisions of § 727 and § 1328. (Citations omitted.)

### CONCLUSION

Based on the foregoing, this court must decline jurisdiction over the D.M.V. and other related entities (i.e. the JUA) as the Eleventh Amendment precludes a federal court from exercising jurisdiction over a state and its agencies. See *Seminole*, supra. Moreover, this court, provided that the state court does not allow the D.M.V. to assert its state sovereign law immunity there, holds that the *Ex Parte Young* doctrine does not apply. See *Coeur d'Alene Tribe*, supra. Alternatively, this court holds that the Supremacy Clause imposes a duty on the state court to apply federal bankruptcy law in determining the validity of the discharge of the D.M.V. claims despite the asserted sovereign immunity defense of the D.M.V. Accordingly, with respect to Debtors Norman Atwood Havens, Jr.; John and Robin Crane; George W. Pennell and Charles L. Williams, this court holds that since the state court is obliged to apply federal law with respect to the validity of the discharges of the D.M.V. surcharge debts entered in the above cases, an adequate forum exists for the protection of the rights of these debtors.

Debtors should submit an Order in accordance with this opinion within ten (10) days.